[Crim. No. 2910. In Bank.—May 19, 1926.]

## THE PEOPLE, Respondent, v. FELIX SLOPER, Appellant.

[1] CRIMINAL LAW—DEATH SENTENCE—AFFIRMANCE OF JUDGMENT—REMITTITUR—DUTY OF SUPERIOR COURT.—Upon the going down of the *remittitur* and the spreading of the same on the minutes of the superior court after affirmance on appeal of a judgment of conviction of murder of the first degree carrying a sentence of death, it became the duty of the superior court to make all orders necessary to carry the judgment into effect.

[2] ID.—APPEAL—STAY OF EXECUTION OF JUDGMENT.—An appeal to the supreme court from a judgment of conviction stays execution in all capital cases until the determination of the appeal.

[3] ID.—ORDER AFTER JUDGMENT—APPEAL.—An appeal may be taken by the defendant in a criminal cause from any order made after judgment affecting the substantial rights of the party.

[4] ID.—ORDER FIXING DATE OF EXECUTION OF DEATH SENTENCE—APPEAL.—While it was formerly the rule that an order fixing

---

1. See 8 Cal. Jur. 641.
2. See 8 Cal. Jur. 548.
3. See 8 Cal. Jur. 492.
4. See 8 Cal. Jur. 494.

the date of execution of a prisoner under previous sentence of death was one made after final judgment, from which an appeal might be taken, such is not now the law by reason of the amendment in 1905 to section 1227 of the Penal Code to the effect that there shall be no appeal from an order fixing the time for and directing the execution of judgments of death remaining unexecuted.

[5] ID.—INSANITY—EFFECT UPON TRIAL AND PUNISHMENT OF DEFENDANT.—A person cannot be tried, adjudged to punishment, or punished for a public offense while he is insane.

[6] ID.—DUTY OF TRIAL JUDGE.—If, at any time during the pendency of the action against a defendant charged with murder, up to the time when he was arraigned for judgment after his conviction, a doubt had arisen as to his sanity, it would have been the duty of the trial court to submit that question to a jury, and to suspend the trial, or the pronouncement of judgment, until the question was determined by its verdict.

[7] ID.—VERDICT OF JURY—EFFECT OF.—The verdict of the jury finding a defendant guilty of murder must be accepted as finally determining that he was not insane when he fired the fatal shot, and any contention concerning his sanity before judgment in the trial court cannot thereafter be considered, where it does not appear that any effort was made to interrupt the trial or stay the proceedings until the question of his sanity could be tried by a jury, although it was argued to the jury in the trial court that he should be relieved of the legal consequences of his act for the reason that he was afflicted with insanity.

[8] ID.—REFIXING OF TIME FOR EXECUTION OF DEATH SENTENCE—RENDITION OF JUDGMENT—SENTENCE.—The refixing of the time for the carrying out of the execution of a death sentence does not constitute the pronouncement or rendition of a judgment; and neither the statutes of this state nor due process of law require that, upon the affirmance of a judgment of conviction, the accused shall be sentenced anew by the trial court to suffer punishment of death.

[9] ID.—ADJUDICATION OF PUNISHMENT—EFFECT OF APPEAL UPON.—An adjudication of punishment is not vacated by an appeal from the judgment; only its execution is stayed pending the proceedings in the supreme court.

[10] ID.—FIXING OF TIME AND PLACE OF EXECUTION—REGULATION BY STATUTE.—The fixing of time and place of execution of a death sentence is not part of the judgment of sentence of death, and may be regulated by statute; and an order fixing a day upon

5.  See 8 Cal. Jur. 195; 14 R. C. L. 605.
7.  See 8 Cal. Jur. 199.
8.  See 8 Cal. Jur. 487.

which the judgment shall be executed, made on the going down
of the *remittitur* after affirmance of the judgment on appeal,
amounts in effect to nothing more than appointing a day for
carrying the judgment into execution.

[11] ID. — DEATH SENTENCE — AFFIRMANCE ON APPEAL — JURISDICTION
OF TRIAL COURT — INTENTION OF LEGISLATURE — REMEDY OF DE-
FENDANT IN CASE OF INSANITY AFTER RENDITION OF JUDGMENT—
APPEAL — PROBABLE CAUSE. — Upon the *going down of the re-
mittitur* after affirmance on appeal of a judgment of conviction of
murder carrying a sentence of death, it was the intention of the
legislature to limit the jurisdiction of the trial court to the mak-
ing of the orders necessary to carry the judgment into effect;
and, in view of the comprehensive and adequate statutory pro-
vision made for the determination of the question of the sanity
of a defendant who is alleged to have become insane after the
rendition of a judgment of death, no substantial right of a de-
fendant (whose judgment of conviction of murder has been af-
firmed on appeal, and who claims to have become insane since
the rendition of said judgment) is affected by the action of the
trial court in denying his motion that no proceedings relating to
the refixing of the time for the execution be taken against him,
and his demand that his sanity be determined by a jury; and
for that reason no appeal lies to the supreme court, and the
facts do not present a proper case for the issuance of a certi-
ficate of probable cause.

[12] ID.—SUSPENSION OF EXECUTION—POWER OF WARDEN.—No judge,
court, or officer, other than the Governor, can suspend the execu-
tion of the judgment of death, except that the warden of the
state prison, to whom the defendant is delivered for execution,
may do so for the purpose of inquiring into the question of his
sanity.

[13] ID.—PERFORMANCE OF DUTY BY WARDEN—PRESUMPTIONS.—If it
be a fact that a condemned man has become insane since the
rendition of the judgment of death, it must be assumed that the
warden of the state prison will do his full duty to the end that
the question of the prisoner's sanity may be judicially deter-
mined.

(1) 17 C. J., p. 375, n. 59.    (2) 17 C. J., p. 107, n. 43, p. 109,
n. 66.    (3) 17 C. J., p. 33, n. 30.    (4) 17 C. J., p. 34, n. 33, 36.
(5) 16 C. J., p. 98, n. 86.    (6) 16 C. J., p. 789, n. 40, p. 790, n. 41,
46.    (7) 16 C. J., p. 791, n. 55 New.    (8) 12 C. J., p. 1209, n. 74
New; 16 C. J., p. 1331, n. 11; 17 C. J., p. 375, n. 56.    (9) 17 C. J.,
p. 108, n. 52.    (10) 16 C. J., p. 1319, n. 96 New.    (11) 17 C. J.,
p. 36, n. 67, p. 375, n. 59.    (12) 16 C. J., p. 1337, n. 8.    (13) 16
C. J., p. 1337, n. 8.

12.  See 8 Cal. Jur. 485; 8 R. C. L. 253.

APPLICATION for stay of execution of death sentence and for a writ of probable cause after affirmance on appeal of judgment of conviction of murder with death penalty. Application denied.

The facts are stated in the opinion of the court.

Wm. F. Herron and Harry A. McKenzie for Appellant.

U. S. Webb, Attorney-General, and Wm. F. Cleary, Deputy Attorney-General, for Respondent.

WASTE, C. J.—Application for a stay of execution of death sentence, and for a writ of probable cause. The defendant, Felix Sloper, was placed on trial for the murder of George W. Campbell, a police officer of the city and county of San Francisco. The jury returned a simple verdict of guilty of murder in the first degree, and the defendant was sentenced to pay the extreme penalty. On appeal to this court the conviction was affirmed. (*People* v. *Sloper, ante,* p. 238 [244 Pac. 362].) During the pendency of the appeal Sloper was confined in the county jail of the city and county of San Francisco, and was there confined when the *remittitur* went down and was spread on the minutes of the superior court. [1] It then became the duty of the court below to make all orders necessary to carry the judgment into effect. (Pen. Code, sec. 1265; *People* v. *Dick,* 39 Cal. 102.)

Section 1227 of the Penal Code provides that if, for any reason, a judgment of death has not been executed, and remains in force, the court in which the conviction was had shall, on appplication of the district attorney, or may, upon its own motion, make and cause to be entered an order appointing a day upon which the judgment shall be executed. Pursuant to the provisions of the section, Sloper was brought before the superior court of the city and county of San Francisco for the purpose of having a day fixed for the execution of the judgment. His counsel thereupon interposed a motion that no proceedings relating to the refixing of the time for execution be taken against the defendant for the reason that, since the rendition of the original judgment in the cause, Sloper had become, and was at the time of making the motion, violently insane. Demand was also made

by counsel that the sanity of the defendant be determined by a jury to be impaneled for that purpose. The motion and demand were supported by the affidavits of several persons, each of whom stated, in substance, that the affiant believed that Sloper was insane, and gave reasons for such belief. There was also offered the oral testimony of a number of witnesses who testified that they knew the defendant, had closely observed him, and that, in their opinion, he was insane and did not realize the nature of the proceedings against him nor of his impending fate. After these proceedings, which appear to have consumed several days, the court denied the motion, and refused to submit the question of Sloper's sanity to a jury. The defendant, by his counsel, thereupon announced in open court that, pursuant to subdivision 3 of section 1237 of the Penal Code, he appealed to the supreme court from the order denying his motion. Over the objection of appellant's counsel that it had lost jurisdiction to proceed further, by reason of the fact that an appeal had been taken, the lower court appointed the twenty-fifth day of June, 1926, as the day upon which the judgment of death should be executed. Application subsequently made on behalf of the defendant to the court below for a certificate of probable cause for the appeal was denied, and a stay of proceedings pending the application to this court for such certificate was refused.

It is alleged that, unless a certificate of probable cause be granted, the defendant will be put to death by the warden of the penitentiary before an appeal from the order of the lower court refusing to permit the question of his sanity to be heard and determined by a jury can come on for hearing and determination here. The question presented by the application is that of the jurisdiction of the superior court to do anything in this case other than to appoint a day upon which the judgment of death shall be executed, and of the power of either the court below or of this court to stay the execution or grant a writ of probable cause under the circumstances herein appearing.

[2] An appeal to the supreme court from a judgment of conviction stays execution in all capital cases until the determination of the appeal. (Pen. Code, sec. 1243; *Ex parte Edgar*, 119 Cal. 123, 127 [51 Pac. 29].) In this case the appeal from the final judgment of conviction and from the

order denying defendant's motion for a new trial has been determined, and the appeal from the judgment no longer acts as a stay. [3] An appeal may also be taken by the defendant in a criminal cause from any order made after judgment affecting the substantial rights of the party. (Pen. Code, sec. 1237, subd. 3.) [4] While it was formerly the rule, well supported by the decisions of this court, that an order fixing the date of execution of a prisoner under previous sentence of death was one made after final judgment, from which an appeal might be taken, such is not now the law. In 1905, the legislature amended section 1227 of the Penal Code, relating to judgments of death remaining unexecuted, by adding thereto the provision that from an order fixing the time for, and directing the execution of, such judgments there shall be no appeal. (Stats. 1905, p. 700.) It follows, therefore, that, unless the defendant, Sloper, has the right of appeal from the action of the court refusing to submit the question of his sanity to a jury, his application to this court for relief must be denied. It is most earnestly contended in his behalf that the order denying his motion very vitally affected his substantial rights, in that it might result in the execution of an insane person. For the reasons we shall advance, we do not share that contention.

[5] It is, of course, the law that a person cannot be tried, adjudged to punishment, or punished for a public offense while he is insane. (Pen. Code, sec. 1367.) [6] If, at any time during the pendency of the action against the defendant Sloper up to the time when he was arraigned for judgment after his conviction, a doubt had arisen as to his sanity, it would have been the duty of the trial court to submit that question to a jury, and to suspend the trial, or the procurement of judgment, until the question was determined by its verdict. (Pen. Code, sec. 1368.) [7] Although it was argued to the jury in the trial court that Sloper should be relieved of the legal consequences of his act in causing the death of Campbell, for the reason that the defendant was afflicted with insanity, it does not appear that any effort was made to interrupt the trial or stay the proceedings until the question of his sanity could be tried by a jury. Consequently the verdict of the jury finding him guilty of the murder must be accepted as finally deter-

mining that Sloper was not insane when he fired the fatal shot, and any contention concerning his sanity before judgment in the court below cannot now be considered. Therefore the provision of the section, *supra,* that a person cannot be tried or adjudged to punishment while he is insane is not involved in this proceeding. But, on behalf of the defendant, it is contended that there still remains to support his application the provision that he may not be punished while he is insane, and that the court ought not appoint a day for his execution.

[8] The refixing of the time for the carrying out of the execution does not constitute the pronouncement or rendition of a judgment. Neither the statutes of California nor due process of law require that, upon the affirmance of a judgment of conviction, the accused shall be sentenced anew by the trial court to suffer punishment of death. [9] An adjudication of punishment is not vacated by an appeal from the judgment; only its execution is stayed pending the proceedings in the supreme court. [10] The fixing of time and place of execution is no part of the judgment of sentence of death, and may be regulated by statute. (*Schwab* v. *Berggren,* 143 U. S. 442, 451 [36 L. Ed. 218, 12 Sup. Ct. Rep. 525, see, also, Rose's U. S. Notes] ; *Costley* v. *Commonwealth,* 118 Mass. 1, 35. The original judgment in this case became final and conclusive upon affirmance by the supreme court. The order fixing a day upon which the judgment shall be executed, made on the going down of the *remittitur,* amounts in effect to· nothing more than appointing a day for carrying the judgment into execution. (*In re Spagnoli,* 193 Cal. 472 [225 Pac. 274].)

Adequate statutory provision, as we have pointed out, is made for the determination of the question of the sanity of a defendant during the pendency of a trial, and when he is brought before the court for judgment and conviction. Equally adequate statutory provision is made for the complete protection of the rights of a defendant who may have become insane after his conviction and sentence. It is provided in section 1221 of the Penal Code that if, after his delivery to the warden of the state prison for execution, there is good reason to believe that a defendant under judgment of death has become insane, the warden must call such fact to the attention of the district attorney of the county

in which the prison is situate, whose duty it is to immediately take the necessary steps that the question of the sanity of the defendant may be inquired into. If it be found that the defendant is insane, the court must direct that he be taken to one of the state hospitals for the insane, and there kept in safe confinement until his reason is restored. When the defendant recovers his reason the superintendent of the hospital must certify that fact to the Governor, who must thereupon issue to the warden his warrant appointing a day for the execution of the judgment. (Pen. Code, secs. 1222–1224.) These sections of the code were enacted at the same session at which it was provided there shall be no appeal from the order fixing the time for, and directing the execution of, judgments of death which remain in force, but, for some reason, have not been executed. [11] We must conclude, therefore, that it was the intention of the legislature to limit the jurisdiction of the trial court, in proceedings of this nature, to the making of the orders necessary to carry the judgment into effect. We are of opinion, also, that, in view of the comprehensive and adequate provision made for the determination of the question of the sanity of a defendant who is alleged to have become insane after the rendition of a judgment of death, no substantial right of the defendant Sloper was affected by the action of the court below in denying his motion. For that reason no appeal lies to this court, and the facts do not present a proper case for the issuance of a certificate of probable cause. [12] Neither can any judge, court, or officer, other than the Governor, suspend the execution of the judgment of death, except that the warden of the state prison, to whom the defendant is delivered for execution, may do so for the purpose of inquiring into the question of his sanity. (Pen. Code, sec. 1221.) [13] If it be a fact in this case that the condemned man is insane, it must be assumed that the warden of the state prison will do his full duty to the end that the question of the prisoner's sanity may be judicially determined.

The application for a writ of probable cause and for a stay of proceedings until a transcript of the proceedings in the court below can be prepared and transmitted to this court must be denied. It is so ordered.

Richards, J., Shenk, J., Curtis, J., Seawell, J., and Lennon, J., concurred.