[S. F. No. 17792.   In Bank.   Sept. 15, 1948.]

ETTA WILLIAMS, Appellant, v. CLINTON T. DUFFY, as Warden of the State Prison, etc., et al., Respondents.

James A. Starritt for Appellant.

Fred N. Howser, Attorney General, and Clarence A. Linn, Deputy Attorney General, for Respondents.

SCHAUER, J.—The attorney general moves to dismiss as irregular, in that it is assertedly taken solely for the purpose of delaying execution of a valid death sentence, this appeal from a judgment of the Superior Court of Marin County which denies a petition for writ of mandate.  The writ is sought to compel respondents, the warden and acting warden of San Quentin State Prison, to institute a judicial inquiry into the sanity of Arthur R. Eggers, who is confined in the prison under judgment imposing the sentence of death, which judgment has been affirmed on appeal (*People* v. *Eggers* (1947), 30 Cal.2d 676 [185 P.2d 1]).  The procedure for such an inquiry is set

out in sections 3701 through 3704 of the Penal Code. Section 3701 provides, in material part, "If, after his delivery to the warden for execution, *there is good reason to believe* that a defendant, under judgment of death, has become insane, the warden must call such fact to the attention of the district attorney of the county in which the prison is situated, whose duty it is to immediately file in the superior court of such county a petition, stating the conviction and judgment, and the fact that the defendant is believed to be insane, and asking that the question of his sanity be inquired into. . . ." (Italics added.)

It is to be noted that it is unlawful to execute an insane person (Pen. Code, § 1367) and that the warden's duty, as prescribed by the above quoted section, depends not on the fact of insanity but on the fact as to whether "there is good reason to believe that a defendant . . . has become insane." It is the position of petitioner that the warden has no discretion in the premises; i. e., that when there has been called to the attention of the warden evidence which is competent to establish prima facie that a defendant is insane it becomes the immediate and absolute duty of the warden to initiate the judicial proceedings provided for in sections 3701 et sequitur. In other words, urges petitioner, it is beyond the jurisdiction of the warden to himself make any inquiry either as to the fact of insanity or as to the *weight of reasons for believing* that the defendant is sane or insane; if a single competent witness suggests to the warden that a condemned defendant is insane the warden may not consider the opinions of qualified experts or other witnesses to the contrary and determine that in his view there is *not* "good reason to believe that" the defendant "has become insane"; on the contrary he is bound, absolutely, to accept any competent prima facie showing of insanity as being legally "good reason to believe that" the defendant "has become insane," and the ultimate fact as to sanity must then be determined upon trial before a jury. Such position, for the reasons hereinafter stated, cannot be sustained.

If petitioner's contention were tenable it would lie within the power of any defendant under death sentence to procure, without regard to fact or justice, delay—and perhaps an unlimited number of delays—in execution of the sentence if he, his relatives or friends, could find any competent witness, either psychiatrist or intimate lay acquaintance (who might

be a fellow convict), who would express the opinion that such defendant "has become insane." It is not remarkable at all that persons under sentence of death, and, subject to some qualifications, their relatives and friends, shall seek by every resource at their command to avoid or delay execution of the sentence. It is easy, and under the circumstances would be relatively safe, for an unscrupulous person to corruptly express an opinion that a sane defendant has become insane; it is likewise true that relatives and friends of a condemned person may honestly and conscientiously but mistakenly form an opinion that he has become insane. The law must recognize all these facts and cope with them; and to cope with them effectually there must be some range of discretion for the initial ascertainment and determination by a disinterested agency of the fact as to whether there is in truth "good reason to believe" that the defendant "has become insane." We are satisfied that the bounds of reasonable discretion have not been transcended here either by the warden (or the acting warden) or the trial judge and that the defendant has been accorded a full measure of every legal right to which he is entitled.

The history of Eggers' campaign to avoid or delay execution of sentence is as follows: After his conviction of first degree murder was affirmed by this court (*People* v. *Eggers* (1947), *supra,* 30 Cal.2d 676), February 6, 1948, was fixed as the date for execution. On January 30, 1948, Eggers petitioned this court for stay of execution and for the writ of habeas corpus. These petitions were denied without opinion on February 3, 1948 (Cr. 4873). On February 5, 1948, the United States Supreme Court granted a stay of execution pending consideration of Eggers' petition for the writ of certiorari. On March 15, 1948, the United States Supreme Court denied certiorari. On April 5, 1948, that court denied Eggers' petition for a rehearing and vacated the stay. June 25, 1948, had been fixed as the date for execution of sentence when, on June 22, 1948, Etta Williams, elder sister of Eggers, adopting the procedure suggested by the attorney general of California in *Phyle* v. *Duffy* (1948), 334 U.S. 431, —— [68 S.Ct. 1131, 92 L.Ed. ——, ——], instituted this mandamus proceeding, alleging that Eggers is "so far mentally deranged as to be incapable of acting in his own behalf, and for that reason your Petitioner brings this action for and on behalf of . . . Eggers." The trial court granted the alternative writ of mandate and stayed execution. It heard evidence and argument as to whether

"there is good reason to believe that [Eggers] . . . has become insane" (Pen. Code, § 3701). After such hearing it found "That said Arthur R. Eggers is presently sane and capable of acting in his own behalf. That respondents do not have, nor is there any good reason to believe that Arthur R. Eggers has become insane or is presently insane," and rendered the judgment from which petitioner has appealed.

A new date—September 24, 1948—has been set for execution. Petitioner asks that execution again be stayed and "That the Court set this matter on the calendar in the regular manner, allowing statutory time for filing of briefs and oral argument." She asserts baldly that "The appeal has merit" but, as hereinafter shown in some detail, she does not, nor can she, make any showing of substance in support of such assertion.

The attorney general recognizes the usual rule that "if the disposition of a motion to dismiss requires a consideration of the appeal upon its merits, the motion must be denied," and relies upon the exception thereto that "An appellate court has inherent power to dismiss an appeal where an examination of the judgment roll discloses that the appeal is frivolous" (*Estate of Wunderle* (1947), 30 Cal.2d 274, 279 [181 P.2d 874]) or where "a mere inspection of the record discloses that no relief can be given to the appellant" (*Hibernia Sav. & Loan Soc.* v. *Doran* (1911), 161 Cal. 118, 120 [118 P. 526]; see also *People* v. *Smith* (1933), 218 Cal. 484, 489 [24 P.2d 166]; *People* v. *Shorts* (1948), *ante*, pp. 502, 517 [197 P.2d 330]).

In order to prevail in this appeal petitioner would have to show that there is no evidence to support the trial court's findings that Eggers is sane and that there exists no good reason to believe that he has become insane; she would have to show that the evidence impels a finding that there is good reason to believe that he has become insane and, therefore, that it is the duty of the warden to institute a full judicial inquiry into the question, as provided in section 3701. Examination of the reporter's transcript discloses that there exists no basis for sincerely advancing such contentions. The evidence in this connection is as follows: On June 3, 1948, in accord with prison routine, three psychiatrists examined Eggers; they concluded that he was sane and so reported to the warden. There is no evidence that Eggers behaved in such a manner that the warden should have questioned his sanity. The first notice to the warden that anyone believed that Eggers

was not sane was given by service of this petition. Thereafter, on June 25, the warden caused Eggers to be examined by three psychiatrists other than those who had examined him on June 3. They too concluded and reported to the warden that Eggers was sane. The only expert opinion to the contrary is that of a psychiatrist who examined Eggers on June 26, at the request of counsel then representing petitioner, and reported to the warden that in his opinion Eggers was insane. Obviously, the trial court's determination is amply supported by the evidence and, therefore, cannot be disturbed. (See *Mitchell & Johnson* v. *Smith* (1936), 16 Cal.App.2d 119 [60 P.2d 509] ; *Heaton* v. *Justice's Court* (1937), 19 Cal.App.2d 118, 122 [64 P.2d 1004] ; *Thompson* v. *Brown* (1946), 75 Cal. App.2d 344, 348 [170 P.2d 1010].)

The trial court appears to have made careful inquiry as to whether Eggers is within the prohibition of section 1367 of the Penal Code that ''A person cannot be . . . punished for a public offense, while he is insane.'' There is an analogy between the case here and that presented by a defendant who, after final judgment of conviction, seeks relief in the nature of *coram nobis*. It is at once apparent that the cases are different in that the *coram nobis* procedure would vacate the judgment for a fact which existed but was unknown at the time of trial and which, if known, would have precluded the judgment which was entered, whereas proceedings based on sections 1367 and 3701 et sequitur of the Penal Code do not attack the judgment insofar as it constitutes an adjudication of guilt nor do they challenge any previously litigated fact or rely on any earlier existing fact; rather do they seek solely, as their ultimate object, to prevent or delay execution of an admittedly valid judgment on the ground that since the judgment was entered a fact (insanity of the defendant) has come to exist which fact, so long as it exists, precludes execution of the judgment. (Pen. Code, § 1367.) It is true, however, in relation to both proceedings, that the defendants have suffered final judgments of conviction; that such judgments are presumptively valid and enforceable; and that the defendant (or another acting for him) who would vacate the judgment, or would prevent or delay its execution, bears the burden of procedure and of proof. (See *People* v. *Shorts* (1948), *supra, ante,* pp. 502, 505.) And as stated in *Phyle* v. *Duffy* (1948), *supra,* 334 U.S. 431, —— [68 S.Ct. 1131, 92 L.Ed. ——, ——], ''Applications for inquiries into sanity made by a de-

fendant sentenced to death, unsupported by facts, and buttressed by no good reasons for believing that the defendant has lost his sanity, cannot, with any appropriate regard for society and for the judicial process, call for the delays in execution incident to full judicial inquiry. And a court can just as satisfactorily determine by mandamus as by direct application whether there are good reasons to have a full-fledged judicial inquiry into a defendant's sanity.''

Since there is shown to exist no tenable ground whatsoever for attack on the judgment denying issuance of the writ of mandate, it is apparent that petitioner's appeal from such judgment fails to constitute any justifiable basis for a stay of execution; it is further apparent that this appeal has no proper appellate objective and, therefore, is in that respect irregular in a substantial particular and can be dismissed. (Pen. Code, § 1248; *People* v. *Smith* (1933), *supra,* 218 Cal. 484, 487, 489; *People* v. *Shorts* (1948), *supra, ante,* pp. 502, 517.) As in the Shorts case (*ante,* p. 517), ''Its objective is not the correction of error, the enforcement of legal right, or the reversal of the trial court; it seeks only groundless delay, and to that extent defeat of justice, in the execution of a valid final judgment.''

For the reasons above stated petitioner's motion for stay of execution is denied; respondent's motion to dismiss petitioner's appeal is granted; the appeal is, accordingly, dismissed. Let the remittitur issue forthwith.

Gibson, C. J., Shenk, J., Carter, J., and Spence, J., concurred.

Edmonds, J., and Traynor, J., concurred in the judgment.