[Crim. No. 5012.    In Bank.    Sept. 7, 1949.]

THE PEOPLE, Respondent, v. ALBERT E. NIXON et al., Appellants.

Ernest Spagnoli for Appellants.

Fred N. Howser, Attorney General, Walter L. Bowers, Assistant Attorney General, and Clarence A. Linn, Deputy Attorney General, for Respondent.

EDMONDS, J.—Albert E. Nixon and Jesse A. Murphey pleaded guilty to murder, which was determined, after a full hearing, to be of the first degree, and were sentenced to death by judgments which have become final. (*People* v. *Rye,* 33 Cal.2d 688 [203 P.2d 748].) A few days before the date fixed for execution, both Nixon and Murphey, in the court where the sentences were pronounced, moved (1) to vacate the judgments and (2) to allow the withdrawal of the pleas of guilty, upon the ground that they were involuntary. After a full hearing at which affidavits were admitted into evidence and witnesses examined, the court denied the motion. An appeal was then taken from that order.

[1] The attorney general has moved to dismiss the appeal upon the ground that "the motion made in the court below . . . was without any merit and was interposed solely for purposes of delay; and that the appeal taken to this court from the denial of said motion is frivolous and taken solely for purposes of delay." He recognizes the rule that ordinarily an appellate court will not entertain a motion to dismiss which is based upon grounds requiring an examination of the record for its disposition. But, as stated in *Hibernia Savings & Loan Society* v. *Doran,* 161 Cal. 118, 120 [118 P.

526], "where . . . a mere inspection of the record discloses that no relief can be given to the appellant this court will consider the question, to save unnecessary delay. . . ." (See, also, *Williams* v. *Duffy*, 32 Cal.2d 578 [197 P.2d 341].)

**[2]** However, by the time the motion to dismiss came on for hearing, the parties had filed their briefs upon the merits and it was stipulated that the appeal might be submitted for decision without further argument. By that stipulation, the question presented by the attorney general's motion has become moot and need not be determined.

██ The sole contention of the appellants is that, upon the record, the trial court abused its discretion in denying the motion to withdraw the pleas of guilty. To support that position, a series of affidavits and letters by the defendants were offered in evidence. In substance, they repeat the same story: Nixon and Murphey claim to have "understood" that if they pleaded guilty their punishment would not exceed life imprisonment, but that if the case went to trial the district attorney would insist upon the death penalty.

The affidavits themselves, however, are equivocal in stating the defendants' position. Murphey declared: "He [the district attorney] did not tell us we would not get the death penalty but if we would plead guilty he would not ask for it. . . ." Nixon's story was to the same effect: "The reason we wanted to plead guilty is because the district attorney said if we pleaded guilty . . . he would not ask for the death penalty." The record of the hearing to determine the degree of the crime shows no recommendation as to punishment. In connection with the present motion, the district attorney testified that, "I made no such representation to them . . ., however, at the hearing, I made no argument for the death penalty."

By his affidavit Murphey also said: "They had not come out and promised us we would not get the supreme penalty but we were told they would not ask for it and two of the officers that always escorted us from jail to court kept telling us we would not get the death penalty and was offering to bet ten to one in our favor we would not get the death penalty." The officer testified at the hearing upon the present motions: "They were many times asking me if I had ever seen a death by gas, and what the reactions were. And they never expressed anything in their hopes at any time of getting anything but death . . . I just told them once, I said, 'Oh, I don't think you fellows will get the extreme penalty.' . . . [I was] trying to cheer them up. . . . That was just before

the day of sentencing . . . on the way up to the court. . . .''
This was almost a week after the pleas of guilty were entered.

In argument the defendants' counsel stressed the lack of any reasonable explanation for the pleas of guilty. Two quite plausible answers were given during the hearing upon the motion: (1) "On the way down, when they asked . . . to plead guilty . . . they said, 'Well, we are going to get the death penalty, but I guess that is the only thing to do. The right thing to do.' ''; (2) ". . . when the facts are well within the grasp of the prosecution, in case of a brutal killing, it is by many members of the profession considered easier to save a man's life before the Judge than it is before the Jury . . .,'' and this was the advice given by counsel appointed for the accused.

The record in the original case, which by stipulation was considered as being in evidence in the present proceeding, discloses that the defendants were repeatedly warned of the serious nature of the charge; that, although counsel was waived, the court refused to accept the pleas until competent counsel had been appointed and had consulted with the defendants. After the pleas of guilty were made a hearing was had to fix the degree of the crime. In this hearing, which lasted for four full days and went far beyond the necessary inquiry, evidence relevant to all of the elements of guilt was received.

Although there is some conflict, the record of the proceeding in which the motion was denied contains substantial support for that determination. Further, there is considerable doubt whether the affidavits, standing alone, would justify relief in the nature of a writ of error *coram nobis*. (*People* v. *Gilbert,* 25 Cal.2d 422 [154 P.2d 657]; *In re Hough,* 24 Cal.2d 522 [150 P.2d 448]; *People* v. *Martinez,* 88 Cal. App.2d 767 [199 P.2d 375].) As pointed out in this court's prior opinion upholding the judgment, "Throughout the entire proceeding, there was scrupulous regard for the defendants' rights." (*People* v. *Rye,* 33 Cal.2d 688 [203 P.2d 748].) The same careful consideration was given when the motions now under review were heard by Judge Arthur C. Shepard, who sentenced the defendants. In denying the motions he summarized the proceeding which culminated in the death sentences as follows: "I did not choose young counsel [to represent the defendants] that had just been admitted to the bar. I chose counsel who had had some years of criminal law

practice, who knew the ins and outs of the practice. They were not all old men, but they had had considerable experience, and they all represented men in serious cases. I did not appoint just one counsel, I appointed one for each [defendant] . . . if, in the evidence anywhere, had it appeared to the Court that they were not guilty, or that the degree was different than announced, the Court would either have announced a different degree or would have set aside their plea whether they wanted it set aside or not. I would not accept a plea and I do not think any other honorable Court would accept a plea if the evidence did not itself show they were guilty . . .

"I have no doubt in my mind but that the defendants and each of them when they pleaded guilty, hoped down deep in their hearts that they would receive less than the extreme penalty. It would be unnatural if they did not have such a hope. . . . Furthermore, I cannot say that it is not a burden on my mind. It is a tremendous burden, to have to be the instrument that causes the death of a human being. On the other hand, I cannot honestly say that my mind tells me that any other punishment under the law should be meted out . . .

"I cannot think of a thing that I could have done in the ordinary, reasonable processes of the administration of the law that would have more properly protected the rights of these defendants. Now, the mere fact that we are protecting their rights does not mean that they should not receive punishment, nor answer for their crimes. It merely means that we should be sure that they did commit the crime, and we should be sure they are not to be improperly punished for the crime. . . ."

The order is affirmed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., and Spence, J., concurred.

SCHAUER, J., dissenting.—Under the current law of this state the motion of the attorney general to dismiss the appeals should be granted. (*People* v. *Shorts* (1948), 32 Cal.2d 502, 506, 512-513, 516 [197 P.2d 330].) Defendants, in their application for stay of execution, failed to show any merit in the appeals, any probable cause for reversal, or any ground for a stay of execution. On the showing made on their application no stay of execution should have been granted and the appeals should have been dismissed forthwith. (*People*

v. *Shorts, supra.*) The subsequently filed record has not in any material degree either added to or detracted from the showing initially made on the application for stay of execution; if probable cause for reversal was shown on that application (as was necessarily held by the majority) such probable cause still exists and the judgments should be reversed. If the court erred in granting the stays of execution, whether through an excess of caution inspired by the nature of the penalty involved or otherwise, it should now acknowledge the fact and, consistently with the precedent, vacate the stays of execution and dismiss the appeals.