[Crim. No. 5185.   In Bank.   June 29, 1951.]

THE PEOPLE, Respondent, v. LEANDRESS RILEY,
Appellant.

Jerome A. Duffy, under appointment by Supreme Court, for Appellant.

Edmund G. Brown, Attorney General, and Clarence A. Linn, Deputy Attorney General, for Respondent.

SPENCE, J.—In a proceeding initiated, pursuant to section 3701 of the Penal Code, to determine the sanity of defendant Leandress Riley, who was then incarcerated in San Quentin under a final judgment imposing the death penalty, a jury found him to be "presently sane." The trial court accordingly made its order pursuant to section 3703 of the Penal Code; and from such order defendant attempts to take this appeal.

On September 20, 1949, defendant was found guilty of first degree murder and was sentenced to be executed. The judgment was affirmed by this court upon an automatic appeal. (*People* v. *Riley*, 35 Cal.2d 279 [217 P.2d 625].)

During incarceration at the state prison and while awaiting execution, defendant became somewhat uncooperative and uncommunicative. Such conduct on the part of defendant created some doubt in the warden's mind as to defendant's sanity, and he called six psychiatrists to examine defendant. The views of these experts were submitted to the jury in the present sanity proceeding. They were not entirely in accord in their conclusions. While they apparently agreed that defendant was suffering from a genuine fear concerning his fate as the date of his impending execution approached, they disagreed on the matter of whether or not defendant was feigning the majority of the symptoms to which they referred in their respective reports. Three of the six psychiatrists—Dr. Rapaport, Medical Director of the Agnew State Hospital; Dr. Williams, Medical Director of the Mendocino State Hospital; and Dr. Miller, Medical Director of the Napa State Hospital—were of the opinion that defendant was sane and was feigning the majority of his symptoms. The other three experts—Dr. Schmidt, Dr. Rogers, and Dr. Kirksey, all psychiatrists at San Quentin—while concluding that defendant was insane, gave certain testimony on cross-examination which tended to detract from the force of their general conclusions. For example, defendant's condition was described as a "mild mental instability," with "too much of the feigning element" at times. Dr. Schmidt testified that "one out of every twelve people received at San Quentin is . . . insane." He further stated that in his opinion defendant would improve if the "prospect of capital punishment . . . was removed." The jury, by a vote of nine to three, found defendant to be sane. The order from which this attempted appeal is taken was thereupon entered.

At the outset, respondent made a motion to dismiss this appeal upon the ground that the trial court's order in this

type of proceeding is not subject to such review. Apparently this precise question has not been previously determined in this state, but consideration of the applicable statutory provisions sustains respondent's position—that no appeal may be taken by either party from an order in such proceeding based upon a jury's verdict finding a defendant sane or insane.

The procedure for determining the question of the sanity of a prisoner under sentence of death is specified in sections 3700 to 3704 of the Penal Code. Section 3700 declares that "No judge, court, or officer, other than the Governor, can suspend the execution of a judgment of death, except the warden of the State prison to whom he is delivered for execution, as provided in the . . . succeeding sections, unless an appeal is taken." Section 3701 provides for the determination of the question of defendant's sanity after he has been delivered to the warden at the state prison: "If, after his delivery to the warden for execution, there is good reason to believe that a defendant, under judgment of death, has become insane, the warden must call such fact to the attention of the district attorney of the county in which the prison is situated, whose duty it is to immediately file in the superior court of such county a petition stating the conviction and judgment, and the fact that the defendant is believed to be insane, and asking that the question of his sanity be inquired into. Thereupon the court must at once cause to be summoned and impaneled from the regular jury list of the county, a jury of 12 persons to hear such inquiry." Section 3702 prescribes the procedure for the hearing: "The district attorney must attend the hearing, and may produce witnesses before the jury, for which purpose he may issue process in the same manner as for witnesses to attend before the grand jury, . . ." Section 3703 states that "The verdict of the jury must be entered upon the minutes, and thereupon the court must make and cause to be entered an order reciting the fact of such inquiry and the result thereof . . ." Section 3704 provides, as here pertinent, for the procedure after the court's order is entered: "If it is found that the defendant is sane, the warden must proceed to execute the judgment as specified in the warrant; . . ."

From a reading of these statutory provisions, it is apparent that the instant proceeding, initiated after final judgment, is not one to determine the guilt or innocence of

a defendant, but is an anomalous proceeding provided by statute to determine whether the judgment of conviction, having become final, should be presently executed. In line with the humane principle expressed in section 1367 of the Penal Code that no person shall "be . . . punished for a public offense, while he is insane," the sole purpose of this collateral proceeding is to determine whether a defendant who has been sentenced to death is "presently sane."

But there is no real finality to any verdict or order entered in such proceeding. Recognizing that the mental condition of a convicted person may change from time to time, there is statutory provision for the determination of a defendant's restoration to sanity following an adjudication of his insanity at the time of the prior inquiry into the matter. (Pen. Code, § 3704.) Likewise a determination of sanity made in one inquiry so initiated does not foreclose a further inquiry at a later date into the mental status of a defendant awaiting execution, if the warden has reason to believe that another inquiry should be initiated to determine a defendant's sanity as of that later time.

A study of the historical background of the cited statutes does not disclose that a convicted person, who may become insane following his conviction, has any constitutional or inherent right to have the execution of his sentence suspended by reason of such insanity. At common law the granting of an application for such suspension appears to have been discretionary with the court or the executive power in the exercise of clemency, as a merciful dispensation, an act of grace. In such cases there was no absolute right to a hearing and the ruling of the trial court was not subject to review by appeal. (Blackstone's Commentaries, Book IV, pp. 395-396 [Cooley's Fourth Ed., 1899, Vol. II, pp. 1523-1524] ; *State ex rel. Lyons* v. *Chretien,* 114 La. 81 [38 So. 27, 28] ; *People ex rel. Best* v. *Eldred,* 103 Colo. 334 [86 P.2d 248, 249-250].) The same humane considerations which early prompted the court or the executive to exercise the power to grant suspensions in such cases probably motivated our Legislature in adopting the cited statutory provisions.

Under these circumstances, it seems clear that a convicted person awaiting execution has only such rights and remedies as may be conferred by the statutory provisions, and that these provisions should be construed in the light of their historical background. To this point, it has been held that after conviction and the imposition of sentence, due proc-

ess of law does not require that a judicial hearing be held to ascertain the "present" sanity of a convicted person (*Nobles* v. *Georgia,* 168 U.S. 398, 405-409 [18 S.Ct. 87, 42 L.Ed. 515]) or that the determination of such question be subject to judicial review (*Solesbee* v. *Balkcom,* 339 U.S. 9, 12-13 [70 S.Ct. 457, 94 L.Ed. 604]).

█ Moreover, it is plain that while there is adequate statutory provision for the protection of a defendant who may have become insane after his conviction and sentence (*People* v. *Sloper,* 198 Cal. 601, 607-608 [246 P. 802]), the prescribed inquiry does not purport to be a true adversary proceeding surrounded by all the safeguards and requirements of a common-law jury trial. (*Nobles* v. *Georgia, supra,* 168 U.S. 398, 405.) The rights of a defendant as an offender on trial for an offense are not involved. But if, following his conviction and his delivery to the warden of the state prison for execution, there is good reason to believe that a defendant under judgment of death has become insane, the warden must call such fact to the attention of the district attorney of the county in which the prison is situated, and the latter, *not the defendant,* petitions the court for a hearing before a jury, a proceeding which is distinguished by its designation as an "inquiry." (Pen. Code, § 3701.) No provision is made for the assignment of counsel or notice of hearing to the defendant, but only the district attorney is required to attend the hearing. (Pen. Code, § 3702.) Likewise, it is the district attorney who may produce witnesses, and subpoenas for such purpose are to be issued by him as in a grand jury inquiry rather than by the county clerk as is the usual process followed in a court proceeding. (Pen. Code, § 3702.) Such provisions—wherein no reference is made to any right of the defendant to be represented by counsel, to cross-examine witnesses, or to offer evidence— indicate a course of procedure imposed upon the district attorney closely akin to an ex parte inquiry initiated on the same premise as proceedings instituted in the exercise of the common-law power of informal judicial or executive clemency.

█ These statutory provisions establish the measure of a defendant's right to any determination of the question of his present sanity, "purely a matter of legislative regulation" (*Nobles* v. *Georgia, supra,* 168 U.S. 398, 409; *People* v. *Trippell,* 20 Cal.App.2d 386, 389 [67 P.2d 111]), a postconviction proceeding as distinguished from the ordinary criminal proceeding to determine the issue of a defendant's guilt (*Wil-*

*liams* v. *New York,* 337 U.S. 241, 246-247 [69 S.Ct. 1079, 93 L.Ed. 1337]). In the absence of statutory provision for an appeal from the order made in consequence of the jury's finding as to a defendant's postconviction sanity, it is apparent that the Legislature, in acting upon a subject properly within its control, intended that there should be no such judicial review from the adjudication of the matter as determined in the trial court. ▉ It therefore follows that the order which defendant seeks here to have reviewed must be held nonappealable, and his purported appeal therefrom must be dismissed.

This case, however, is one of first impression and in the interest of furnishing guidance to the trial courts in the conduct of such sanity proceeding, it seems appropriate to discuss briefly the points raised by defendant herein. In passing, it might be mentioned that defendant makes no challenge of the sufficiency of the evidence to sustain the verdict and order, but he limits his contentions solely to alleged errors of procedure.

▉ Defendant first claims that he did not have effective legal representation in that counsel was not appointed to act on his behalf until a few minutes before the scheduled hour of 10 o'clock on the morning designated for the hearing, so that counsel had no time to prepare himself adequately for the presentation of defendant's case. While, as above noted, our statutory provisions do not require such appointment of counsel in this type of collateral proceeding and the trial court's failure to take such action, upon defendant's appearance in court without counsel, would not offend the standards of due process (*Solesbee* v. *Balkcom, supra,* 339 U.S. 9, 10-12), the court here is to be commended in that it very properly did appoint counsel for defendant, for the purpose of affording him the fullest protection in the sanity proceeding. Furthermore, in fairness to defendant's appointed counsel, it should be said that an examination of the record reveals that he acted zealously and competently in aid of defendant in every phase of the case—introducing expert testimony of the mentioned psychiatrists from San Quentin, diligently examining and cross-examining witnesses at the hearing, and arguing to the jury the evidentiary considerations bearing upon the question of defendant's mental condition. Accordingly, defendant may not justifiably complain on this score, as he had effective legal representation. It should be further stated that the district attorney is to be

commended for the very fair and objective manner in which he handled this proceeding, which type of conduct on his part is precisely that contemplated by the statutory provisions relating to such inquiry. (Pen. Code, §§ 3701-3702.)

Defendant next objects to the procedure followed in the impanelment of the jury. It appears that upon the filing of the petition for inquiry into defendant's present sanity, the court fixed the time for the hearing and "ordered that a jury be summoned and impanelled from the regular jury list of the County of Marin." (See Pen. Code, § 3701.) However, on the day scheduled for the hearing, it was discovered that no jury had been summoned and the court thereupon "ordered that a special venire be summoned to try the cause." From the 24 persons so summoned, 12 were selected to hear the inquiry. Apparently no objection was made to the special venire. Moreover, it appears from the record that both defendant's counsel and the district attorney exercised meticulous care in the examination of the prospective jurors—that two were challenged by respondent; two were excused by stipulation of counsel; and no objection on behalf of defendant was made as to any individual juror. Defendant makes no attempt to show that he was prejudiced in any manner by reason of the impanelment of the jurors as so drawn. It is well established that the court has discretion to order a special venire according to the prevailing circumstances, whether the proceeding be civil (Code Civ. Proc., § 226) or criminal (Pen. Code, § 1046), and the propriety of such procedure has been consistently recognized in this state. (*People* v. *Vincent*, 95 Cal. 425, 427 [30 P. 581]; *People* v. *Suesser*, 142 Cal. 354, 359-360 [75 P. 1093]; *Estate of Wall*, 187 Cal. 50, 54 [200 P. 929]; *Hoffman* v. *Southern Pac. Co.*, 101 Cal.App. 218, 231 [281 P. 681]; *Foster* v. *Hudson*, 33 Cal.App.2d 705, 709 [92 P.2d 959].)

Defendant finally contests the validity of the jury's verdict of nine to three, and maintains that a unanimous concurrence should be required as in a criminal trial. The governing statutory provisions (Pen. Code, §§ 3701-3704) contain no express provision in this regard. It appears from the record that the trial court, at the suggestion of both defendant's counsel and the district attorney, instructed the jury that if nine agreed upon a verdict, that would be sufficient. The correctness of such instruction must be sustained in this type of proceeding, instituted for the sole purpose of determining defendant's "present" mental status.

As above noted, such sanity hearing has none of the elements of a criminal proceeding but rather is collateral thereto, and, as such, has been designated a "special proceeding of a civil nature," to which the rules prevailing in criminal trials have no application. (*People* v. *Lawson,* 178 Cal. 722, 728-729 [174 P. 885]; also 24 C.J.S. § 1619b(3), p. 203.) While it appears that in other proceedings prescribed by statute for the determination of questions of sanity, the Legislature has expressly provided that a verdict may be rendered "by at least three-fourths of the jury" (Welf. & Inst. Code, §§ 5125-5129, relating to the jury trial of mentally ill or insane persons; §§ 5400-5408, dipsomaniacs and inebriates; §§ 5500-5516, sexual psychopaths), and that the governing statutory provisions here make no reference whatsoever to the agreement required for a legal verdict (Pen. Code, §§ 3701-3704), in view of the special, anomalous nature of this particular type of proceeding, it is reasonable to conclude that the Legislature intended that the nine-to-three verdict would suffice herein. (*People* v. *Lawson, supra,* 178 Cal. 722, 728-729.)  To this point, it might further be said that due process of law does not require a unanimous verdict, as a criminal trial procedural safeguard, to apply "in post-conviction procedures." (*Solesbee* v. *Balkcom, supra,* 339 U.S. 9, 12.)

Defendant has also presented for consideration a motion for the augmentation of the record, whereby he would include herein various factual matters which were not presented to the trial court at the time of the sanity hearing. Such motion finds no support in the law. (*People* v. *Porter,* 82 Cal.App.2d 585, 586-587 [186 P.2d 704].)

From the foregoing discussion, it is clear that defendant has been afforded the full protection accorded by statute for inquiry into his present sanity, and that he had a fair hearing thereon. However, the judicial procedure so provided does not contemplate that the order made by the trial court upon the determination of the jury should be subject to appeal. To require such judicial review would submit the possibility of carrying out a sentence to interminable delay "inconsistent with the due administration of justice." (*Nobles* v. *Georgia, supra,* 168 U.S. 398, 407.) As was said in *Solesbee* v. *Balkcom, supra,* 339 U.S. 9, at page 13: "To protect itself society must have power to try, convict and execute sentences." Our statutory provisions envisage a postconviction sanity hearing conducted with entire fairness

to a defendant, but, as a matter of clemency so regulated by the Legislature, the determination is left for final disposition in the trial court. (*Nobles* v. *Georgia, supra*, p. 409.)

The motion for augmentation of the record is denied. The purported appeal from the order entered pursuant to section 3703 of the Penal Code is dismissed.

Gibson, C. J., Edmonds, J., and Traynor, J., concurred.

SCHAUER, J.—I dissent.

The majority hold that the "sanity hearing has none of the elements of a criminal proceeding but rather is collateral thereto, and, as such, has been designated a 'special proceeding of a civil nature,' to which the rules prevailing in criminal trials have no application," that the defendant has no right of appeal, and, accordingly, dismiss what they designate as the "purported appeal."

But section 963 of the Code of Civil Procedure provides that "An appeal may be taken from a superior court in the following cases: 1. From a final judgment entered in an action, *or special proceeding,* commenced in a superior court. . . ." (Italics added.) In *Aldrich* v. *Superior Court* (1901), 135 Cal. 12, 14 [66 P. 846], it was succinctly held that "if the proceeding [in this case for restoration of sanity] sought to be instituted by the said application to the superior court . . . was one provided for in our system of procedure or in any way recognized by our law, it was either an 'action' or a 'special proceeding' (Code Civ. Proc., §§ 20, 21, 22, 23); and, under either view, the final judgment entered therein was appealable (Code Civ. Proc., § 963)." In the light of the specific and inclusive language of sections 20[1], 21[2], 22[3], 23[4], and 963 of the Code of Civil Procedure it is impossible for me to understand how any contrary holding could reasonably be reached. (See, also, *In re Bank of San Pedro* (1934), 1 Cal.2d 675, 680 [37 P.2d 80].)

[1]Section 20 provides: "Judicial remedies are such as are administered by the courts of justice, or by judicial officers empowered for that purpose by the constitution and statutes of this state."

[2]Section 21 provides: "These remedies are divided into two classes: 1. Actions; and, 2. Special proceedings."

[3]Section 22 provides: "An action is an ordinary proceeding in a court of justice by which one party prosecutes another for the declaration, enforcement, or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense."

[4]Section 23 provides: "Every other remedy is a special proceeding."

It is also to be noted that this court has held (and the holding does not appear ever to have been challenged) that ''The proceedings provided by the Penal Code for the determination of the question of present sanity in order to determine whether a defendant possesses sufficient mental capacity to be tried, or having been tried and convicted, to be adjudged to punishment (§ 1367 et seq.), or having been adjudged to suffer death, is sane within the meaning of our law precluding execution of such a judgment upon an insane person (Pen. Code, § 1221 et seq.), are special proceedings of a civil nature.'' (*People* v. *Lawson* (1918), 178 Cal. 722, 728 [174 P. 885].) It is section 1367 of the Penal Code which expressly adopts into our statutory law the humanitarian principle, old and respected even in the days of Blackstone[5], which prohibits the trial or punishment (including execution) of an insane person. A comparison of the procedure provided for trial in the superior court of the issues raised on a question of insanity when it arises before, during or after trial, but before judgment[6], with that to be taken when the question is raised after judgment of death and before execution[7], discloses no substantial ground for allowing an appeal in the one case and denying it in the other. Both procedures show legislative recognition of a necessity for, and a right to pursue, judicial enforcement of the rights

[5]As stated in 4 Blackstone's Commentaries, page 24: ''Also if a man in his sound memory commits a capital offense, and before arraignment for it, he becomes mad, he ought not to be arraigned for it; because he is not able to plead to it with that advice and caution that he ought. And if, after he has pleaded, the prisoner becomes mad, he shall not be tried: for how can he make his defence? If, after he be tried and found guilty, he loses his senses before judgment, judgment shall not be pronounced; and if, after judgment, he becomes of non-sane memory, execution shall be stayed: for peradventure, says the humanity of the English law, had the prisoner been of sound memory, he might have alleged something in stay of judgment or execution. Indeed, in the bloody reign of Henry the Eighth, a statute was made, which enacted that if a person, being *compos mentis* (of sane mind) should commit high treason, and after that fall into madness, he might be tried in his absence, and should suffer death, as if he were of perfect memory. But this savage and inhuman law was repealed by the statute 1 and 2 P. and M., c. 10. For, as is observed by Sir Edward Coke, 'the execution of an offender is for example, *ut poena ad paucos, metus ad omnes perveniat* (that the punishment may reach the few, but the fear of it affect all): but so it is not when a madman is executed; but should be a miserable spectacle, both against law, and of extreme inhumanity and cruelty, and can be no example to others.' But if there be any doubt, whether the party be *compos* or not, this shall be tried by jury.''

[6]See Pen. Code, §§ 1368 et seq.

[7]See Pen. Code, §§ 3701 et seq.

declared in section 1367. The right of appeal in the first case has heretofore consistently been upheld (see e.g., *People* v. *West* (1914), 25 Cal.App. 369 [143 P. 793] ; *People* v. *Lawson* (1918), *supra*, 178 Cal. 722) but if the majority view now announced is to be consistently applied the right of appeal in any case based on the humanely recognized right (the majority say not "right," but mere "merciful dispensation, an act of grace") declared in section 1367 should be denied.

As far back as *People* v. *Ah Ying* (1871), 42 Cal. 18, 21, this court, in reversing a conviction for murder in a case wherein the trial court had failed of its own motion to suspend the trial pending determination of a question of present sanity, said, "There is no plea of present insanity required. If at any time a doubt arose as to the sanity of the defendant, it was the duty of the Court, of its own motion, to suspend the trial or further proceedings in the case, at whatever stage the doubt arose, until the question of sanity was determined. Common humanity requires that one should not be tried for his life while insane . . ." No more should an insane man be put to death. The majority holding here seems to me to be a regrettable retrogression in the standards of civilization.

Since the majority decision dismisses the appeal no useful service would be rendered by a discussion herein of its merits.

For the reasons stated the motion to dismiss the appeal should be denied.

Shenk, J., and Carter, J., concurred.