[S. F. No. 18788. In Bank. Nov. 6, 1953.]

HENRY FORD McCRACKEN, Appellant, v. H. O. TEETS, as Warden, etc., Respondent.

George H. Chula and James C. Monroe for Appellant.

Edmund G. Brown, Attorney General, and Clarence A. Linn, Assistant Attorney General, for Respondent.

SCHAUER, J.—Petitioner is confined under a judgment which imposes the death sentence for first degree murder. He has appealed from a judgment which denies his petition for mandate to compel the warden of San Quentin to institute proceedings for an inquiry into his sanity, and the attorney general has moved in the alternative to dismiss the appeal as frivolous on its face (see *People* v. *Shorts* (1948), 32 Cal. 2d 502, 506, 516, 518 [197 P.2d 330]; *Williams* v. *Duffy* (1948), 32 Cal.2d 578, 583 [197 P.2d 341]; *People* v. *Adamson* (1949), 34 Cal.2d 320, 338 [210 P.2d 13]) or, on like grounds, to affirm the judgment denying mandate. We have determined, under all the circumstances of this case, to deny the motion to dismiss the appeal and to consider the cause on its merits. Upon such consideration it appears that the judgment must be affirmed.

After the judgment of conviction was affirmed (*People* v. *McCracken* (1952), 39 Cal.2d 336 [246 P.2d 913]) and a date for execution of sentence was set, the superior court stayed execution to permit a hearing of the petition for mandate. Petitioner relied upon the statutory rule which peremptorily forbids execution of a person while he is insane (Pen. Code, § 1367) and the implementing rule that "If, after his delivery to the warden for execution, there is good reason to believe that a defendant, under judgment of death, has become insane, the warden *must* call such fact to the attention of the district attorney . . . ," and the latter official "*must*" initiate proceedings which lead to a jury hearing on the issue of insanity (Pen. Code, § 3701; italics added).

As is hereinafter explained, the situation is materially

similar to that in *Williams* v. *Duffy* (1948), *supra,* 32 Cal.2d 578, although the appeal here appears to have been taken in the sincere belief by counsel that, because of uncertainty as to procedural law, it was necessary to protect petitioner's rights, and was not instituted or carried on as part of a mere calculated campaign for delay. The evidence before the trial court, as petitioner concedes, was in substantial conflict.[1] At the close of evidence the trial judge (apparently being of the mistaken belief that the law placed upon the warden the responsibility of determining the fact of sanity), stated, "the law throws upon the Warden . . . the decision as to whether in his opinion—not yours, not mine, not the other fellow's— in his opinion *whether the man has become insane* after he has been received at the institution on a judgment of death. . . . I believe this Court has to determine now whether or not there has been an abuse of discretion by the Warden." (Italics added.) Thereafter the court found that the warden "has no reason to believe that petitioner is other than sane"; that petitioner "knows the crime for the commission of which he has been convicted and the punishment which he is about to suffer"; and that petitioner is sane.

As was pointed out in *Williams* v. *Duffy* (1948), *supra,* page 579 of 32 Cal.2d, "the warden's duty, as prescribed by . . . section [3701], depends not on the fact of insanity, but on the fact as to whether 'there is good reason to believe that a defendant . . . has become insane.'" (See, also, *Phyle* v. *Duffy* (1948), 334 U.S. 431, 443 [68 S.Ct. 1131, 92 L.Ed. 1494].) It is urged that the above quoted statements of the trial judge show that he "was mistaken as to the extent of his review or the issue before him at that mandamus hearing," and that the findings do not determine the controlling question: Was there "good reason to believe" that petitioner, after judgment, had become insane? ■ The findings can-

[1]Such evidence was as follows: The court observed petitioner, who was present at the hearing but either unable or unwilling to answer questions, except that he shook his head indicating negative response to his counsel's question, "Do you know where you are?" Petitioner's counsel and a psychiatrist testified that in their opinions petitioner was insane. The warden testified that in his opinion, based on his own observation and on information which he had received from prison psychiatrists and physicians, petitioner was sane. The chief medical officer and the chief psychiatrist of San Quentin testified that in their opinions petitioner was sane. In evidence, without objection of petitioner, were reports of prison psychiatrists and the prison's chief medical officer; the reports state the results of examinations of petitioner made from time to time after the date of his execution had been fixed and the conclusions that petitioner was sane.

not be impugned by the antecedent erroneous expression of the trial judge. (*Strudthoff* v. *Yates* (1946), 28 Cal.2d 602, 615-616 [170 P.2d 873]; *Southern Cal. Jockey Club* v. *California etc. Racing Board* (1950), 36 Cal.2d 167, 174 [223 P.2d 1].) It is true that there is not, as there should be, a finding expressly determining the controlling issue. However, as is hereinafter explained, the finding that the warden "has no reason to believe that petitioner is other than sane" must, in the light of the other circumstances here shown, be held to be the substantial equivalent of a finding that there was not in fact "good reason to believe" that petitioner had become insane.

 As appears from the statute (Pen. Code, § 3701) and the holding of this court in *Williams* v. *Duffy* (1948), *supra*, page 580 of 32 Cal.2d, it is for the warden initially to determine, in the exercise of his sound discretion, whether there is "good reason to believe" that a defendant has become insane. In the absence of a showing to the contrary we must presume that the warden regularly performed his duty. (See Code Civ. Proc., § 1963, pars. 15, 33.) There is no contention that the warden absented himself from the prison or refused to take cognizance of pertinent evidence available to him, or that the finding that the warden "has no reason to believe that petitioner is other than sane" is in any way related to an absence from duty or refusal to consider available evidence. Therefore, such finding (that the warden, presumably acting in accord with the facts and law, had no reason to believe that petitioner was insane) implies a finding that there was in fact no good reason to believe otherwise. (See *Reiniger* v. *Hassell* (1932), 216 Cal. 209, 211 [13 P.2d 737].)

Here, as in the Williams case, *supra*, the evidence which relates to the controlling question whether there was "good reason to believe" that petitioner had become insane, including the testimony of experts, is in conflict. In order to prevail on appeal from the judgment based on such evidence, and the necessarily implied finding against him on such question, petitioner would have to show that there is no substantial evidence to support the determination of the question adverse to him, and that the evidence impels a finding that there was good reason to believe that he was insane (p. 581 of 32 Cal.2d.). This petitioner cannot do upon the record.

Although he has not served and filed an application to produce additional evidence pursuant to rule 23(b) of the

Rules on Appeal, petitioner asserts (citing Code Civ. Proc., § 956a) that he could produce evidence relating to his mental condition after the rendition of the superior court judgment in this proceeding which would establish good reason to believe that he is insane. Affidavits of petitioner's counsel and a psychiatrist have been presented by petitioner and reports of prison doctors and psychiatrists have been presented by the attorney general. Examination of those documents, which concern petitioner's mental condition and the treatment thereof since the rendition of the judgment denying mandate, shows that the additional evidence, if formally produced, would be, as was the evidence before the trial court, in conflict. This case is before us on appellate review, not as a matter of original jurisdiction. Hence, it would be inappropriate for this court to undertake to resolve the conflict. It was not intended by enactment of section 956a "that the reviewing courts should develop generally into trial courts." (*Tupman* v. *Haberkern* (1929), 208 Cal. 256, 269 [280 P. 970].)

Petitioner asserts that he is denied due process of law if he is not accorded judicial review of the question whether there is good reason to believe that he has become insane. It has been held that federal due process accords him no such right. (*Solesbee* v. *Balkcom* (1950), 339 U.S. 9, 12 [70 S.Ct. 457, 94 L.Ed. 604].) Nevertheless, in this proceeding it has been accorded him.

 Inasmuch as the circumstances of this case have brought the entire cause before us, and inasmuch as the record, as above noted, indicates an erroneous view by the trial judge of the duty of the warden in the premises and does not contain a finding expressly resolving the controlling issue, it appears proper to deny the motion to dismiss the appeal. However, after consideration of the entire record, we are satisfied that petitioner has not been prejudiced by the errors noted.

For the reasons above stated, the motion to dismiss the appeal is denied. Likewise for reasons above stated, the judgment appealed from is affirmed. The stay of execution heretofore granted is terminated.

Gibson, C. J., Shenk, J., and Edmonds, J., concurred.

TRAYNOR, J., Dissenting.—Humanitarian considerations have led the Legislature to extend to persons under judgment of death the privilege of avoiding punishment while insane.

(Pen. Code, § 1367.) The warden of the state prison is charged with the responsibility of determining whether there is good reason to believe that a person under judgment of death has become insane. (Pen. Code, § 3701.) Mandamus cannot properly issue to compel the warden to institute proceedings under section 3701, since the courts are prohibited from suspending the execution of a judgment of death (Pen. Code, § 3700), and are without power, except as provided by statute, to determine the sanity of a person sentenced to death and in the custody of the warden. (*In re Phyle,* 30 Cal.2d 838, 846 [186 P.2d 134]; see *People* v. *Sloper,* 198 Cal. 601, 608 [246 P. 802].) A person under judgment of death does not have a constitutional right to have execution of sentence suspended on the ground that he has become insane. (*People* v. *Riley,* 37 Cal.2d 510, 514 [235 P.2d 381]; *Phyle* v. *Duffy,* 34 Cal.2d 144, 157 [208 P.2d 668], concurring opinion.) Procedural due process does not prevent delegation of the duty of determining the sanity of a person under judgment of death to an administrative official and does not require judicial review of that official's determination. (*Solesbee* v. *Balkom,* 339 U.S. 9, 12-13 [70 S.Ct. 457, 94 L.Ed. 604]; *Nobles* v. *Georgia,* 168 U.S. 398, 405-409 [18 S.Ct. 87, 42 L.Ed. 515]; *In re Phyle, supra,* 30 Cal.2d at 847-850; *Phyle* v. *Duffy, supra,* 34 Cal.2d at 159-161.)

Since the court had no jurisdiction to entertain the proceeding, I would reverse the judgment and direct the trial court to dismiss the proceeding. (*In re McGee,* 36 Cal.2d 592, 599 [226 P.2d 1].)

Spence, J., concurred.

CARTER, J.—I dissent.

Since I am firmly of the opinion that mandamus is not available to determine the sanity of a person under sentence of death and that habeas corpus is the only remedy available to such a person, I would reverse the judgment with directions to the trial court to dismiss the proceeding. As a basis for this conclusion I adopt the reasoning and the views expressed by Mr. Justice Schauer in his concurring and dissenting opinion in *Phyle* v. *Duffy,* 34 Cal.2d 144, page 163 et seq. [208 P.2d 668], in which I concurred.

Appellant's petition for a rehearing was denied December 3, 1953. Carter, J., was of the opinion that the petition should be granted.