[Crim. No. 6838.   In Bank.   May 23, 1961.]

THE PEOPLE, Respondent, v. RONALD RITTGER, Appellant.

Lawrence Shostak and Cominos & Shostak for Appellant.

Stanley Mosk, Attorney General, Arlo E. Smith, Albert W. Harris, Jr., and Edward P. O'Brien, Deputy Attorneys General, for Respondent.

THE COURT.—The People move to dismiss defendant's appeal from an order denying his motion to reduce the death penalty, made after this court had affirmed the judgment of death. For the reasons hereinafter stated it appears that the motion should be granted, effective forthwith.

In *People* v. *Rittger* (1960), 54 Cal.2d 720 [355 P.2d 645], we affirmed a judgment of death rendered on defendant's conviction of first degree murder and an order denying his motion for new trial or reduction of the class or degree of

the offense or of the penalty. Thereafter we denied a rehearing, the remittitur went down, and the trial court set the date for reimposition of the death sentence pursuant to Penal Code, section 1193.[1] Defendant filed (in the trial court) "Notice of Motion to Modify Impending Sentence." Such notice stated that the motion was "on the ground that the penalty sought to be imposed is too severe, under the present circumstances. Said motion will be made and based upon this notice and upon the pleadings, papers, records and files in this action, including the decision on appeal by the Supreme Court of the State of California."

On the day fixed for reimposition of sentence the trial court first heard defendant's motion to modify such sentence. It properly declined to pass on the merits of the motion and denied it "upon the ground that the Court has no jurisdiction to entertain the same; final judgment having heretofore been entered." The court set April 12, 1961, as the date for execution and issued its death warrant. On January 25, 1961, defendant noticed his purported appeal from the order denying his motion to modify the penalty. (It is this purported appeal, together with the People's motion to dismiss it, which is now before us.) On February 15, 1961, while the record on appeal was in the course of preparation, defendant filed in this court a petition for mandate to compel the superior court to hear the merits of his motion for reduction of the penalty and to recall the death warrant.[2] On February 21,

---

[1]Section 1193 (subd. 1) provides in pertinent part that "when any judgment imposing the death penalty has been affirmed by the appellate court, sentence may be reimposed upon the defendant in his absence by the court from which such appeal was taken, and in the manner following, to wit: Upon receipt by the superior court from which such appeal is taken of the certificate of the appellate court affirming such judgment, the judge of the said superior court shall forthwith make and cause to be entered an order pronouncing sentence against the defendant, and a warrant signed by the judge . . . must be drawn, and it must state the conviction and judgment and appoint a day upon which the judgment shall be executed, which must not be less than 60 days nor more than 90 days from the time of making such order; . . . when any judgment imposing the death penalty has been affirmed and sentence has been reimposed as above provided there shall be no appeal from the order fixing the time for and directing the execution of such judgment as herein provided."

[2]It is to be noted that if the trial court, after the going down of the remittitur in *People* v. *Rittger* (1960), *supra,* 54 Cal.2d 720, had had jurisdiction to make any order affecting the judgment other than the order contemplated by Penal Code, section 1193 (subd. 1), *ante,* f.n. 1, and if its order denying defendant's "Motion to Modify Impending Sentence" had been appealable, nevertheless the trial court's jurisdiction of the cause would have ceased, and such jurisdiction would have

852

1961, we denied the petition for mandate without opinion. (S. F. 20658.)

On March 7, 1961, the superior court entered an order purporting to grant defendant's motion for a stay of execution to June 14, 1961. On March 16, 1961, the record on appeal was filed in this court. The People, as stated, have moved to dismiss the appeal.

■ The trial court was correct in its conclusion that it was without jurisdiction to entertain the motion to reduce the penalty. Such conclusion was required by both statutory and court-made rules. Section 1193 of the Penal Code, *ante,* f.n. 1, provides for *reimposition,* not reconsideration, of sentence. Upon the original pronouncement of the judgment of death the sentence was entered in the minutes. ■ Execution of the judgment began when, pursuant to the requirement of Penal Code, section 1217, the defendant was delivered to the custody of the warden of the State Prison at San Quentin. (See also Pen. Code, §§ 1202a, 3600; *People* v. *Chessman* (1959), 52 Cal.2d 467, 477, f.n. 1, 498 [23] [341 P.2d 679].) ■ Imprisonment pending execution of a death sentence is a part of the punishment for the crime. (*In re Watts* (1925), 197 Cal. 611, 613 [1] [241 P. 886].) ■ The trier of fact in its sole discretion (*People* v. *Rittger* (1960), *supra,* 54 Cal.2d 720, 734 [12-14]) had deliberately selected the death penalty and on motion for new trial had deliberately refused to reduce it. After the valid, correct sentence was entered in the minutes and defendant commenced service thereof, it was no longer "in the breast of the court" (*United States* v. *Benz* (1931), 282 U.S. 304, 306 [51 S.Ct. 113, 75 L.Ed. 354]) and the trial court was without jurisdiction to modify it. (See *People* v. *Thomas* (1959), 52 Cal.2d 521, 530-531 [6a-8], 533-534 [12] [342 P.2d 889].) ■ When our remittitur went down, the trial court, in the circumstances, could do only those things required by law toward ultimate execution of the judgment; it could not change that judgment, nor could it thereafter extend the time which it had legally fixed for execution of the sentence of death. (See *People* v. *Sloper* (1926), 198 Cal. 601, 604 [1], 607 [10], 608 [11, 12] [246 P.2d 802]; *In re Spagnoli* (1924), 193 Cal. 472, 473 [2] [225 P. 274].)

vested in this court, upon the taking of the appeal. (*In re Osslo* (1958), 51 Cal.2d 371, 379 [8] [334 P.2d 1]; *People* v. *Workman* (1936), 7 Cal.2d 176, 177 [1] [59 P.2d 1005]; *People* v. *Sonoqui* (1934), 1 Cal.2d 364, 366 [2] [35 P.2d 123].)

Defendant relies on several opinions which are not factually or legally controlling and which afford no persuasive analogy to the case at bench. He cites *Lloyd* v. *Superior Court* (1929), 208 Cal. 622 [283 P. 931], and *People* v. *Superior Court* (1930), 208 Cal. 692 [284 P. 451], which hold that by section 1203 of the Penal Code as amended by Stats. 1927, p. 1493, the trial court which imposed a sentence of imprisonment is empowered ''to hear and determine applications for probation at any time prior to the execution of sentence, and that without reference to whether the defendant had in the meantime undertaken to prosecute a vain and unsuccessful appeal.'' [P. 630.] ██ Section 1193, subdivision 1, of the Penal Code, *ante*, f.n. 1, contemplates no such analogous power to reduce a death sentence after affirmance of the judgment; furthermore, as we have seen, defendant's imprisonment in San Quentin is the commencement of execution of his sentence.

Also relied on by defendant is *People* v. *Hall* (1952), 115 Cal.App.2d 144 [251 P.2d 979]. There the appellate court held that the superior court had jurisdiction to grant probation where defendant had been sentenced, committed and physically delivered into custody of the director of corrections. But—and this is a very important qualification—the delivery of the defendant to the prison authority had been made by the sheriff before the time for jurisdictionally cognizable proceedings in the superior court, or to appeal from orders therein, had expired. The legal and factual considerations which gave the trial court such jurisdiction in the Hall case (and which are obviously not present here) are as follows (p. 156 [7-10] of 115 Cal.App.2d): Defendant pleaded guilty to violation of Penal Code, section 288; probation was denied; judgment of imprisonment was entered and commitment ordered but a stay of execution was granted; timely notice of appeal from the judgment was filed. Thereafter defendant filed a motion to set aside the judgment and plea of guilty and dismissed his appeal from the judgment. The motion to set aside the judgment and plea of guilty was denied and defendant filed timely notice of appeal from such order of denial. On defendant's motion bond on appeal from the denial order was fixed and a certificate of probable cause issued.

It is to be emphasized that during all of the period within which the above related events were occurring the defendant in the Hall case either had some jurisdictionally cognizable proceeding pending in the trial court or the statutory time for instituting such proceeding had not expired. Nevertheless,

only three days after the motion to set aside the judgment and guilty plea was denied (and, obviously, before expiration of the 10-day period for filing notice of appeal) the sheriff, believing that he acted properly under the original commitment, delivered defendant to the director of corrections at San Quentin. However, after the certificate of probable cause was issued and bond fixed, defendant by order of the court (which recalled the commitment) was returned to the custody of the sheriff and released on the bail theretofore fixed. Eventually, although the order denying defendant's motion to vacate the judgment and his plea of guilty was affirmed on appeal, the trial court reconsidered and granted defendant's application for probation. (Not involving precisely every element of, but fundamentally consistent with, the trial court's holding in the Hall case see: *People* v. *Banks* (1959), 53 Cal.2d 370, 383 [6, 7, 8] [348 P.2d 102]; *Oster* v. *Municipal Court* (1955), 45 Cal.2d 134, 139-140 [6, 7] [287 P.2d 755]; *People* v. *Superior Court* (1930), *supra*, 208 Cal. 692, 693 [an order purporting to *amend* a judgment after affirmance was reversed but an order granting probation was affirmed].)

The Hall case came to the District Court of Appeal on the People's appeal from the trial court's order denying a motion to set aside the order placing defendant on probation and the order recalling the commitment. In the circumstances related, the holding of the District Court of Appeal that the trial court had jurisdiction to grant probation furnishes no modicum of support for defendant here.

Defendant directs our attention to *People* v. *Reimringer* (1953), 116 Cal.App.2d 332, 343 [19] [253 P.2d 756], which upholds the power of the sentencing court, within 60 days after the commencement of service of judgment of imprisonment, to modify the judgment by specifying the manner of running—whether concurrently or consecutively—of sentences of imprisonment on different counts. That case rests entirely on the appellate court's view of a statute (Pen. Code, § 669) which has no relevance to the matter before us.

Defendant's diligent counsel cites *People* v. *Moore* (1960), 53 Cal.2d 451 [348 P.2d 584], but with commendable candor concedes that it is factually distinguishable. After this court had affirmed a judgment of death and order denying Moore's motion for new trial (*People* v. *Moore* (1957), 48 Cal.2d 541 [310 P.2d 969]) and the remittitur went down, we recalled the remittitur, vacated our judgment in 48 Cal.2d 541, vacated the trial court's judgment and order denying a new trial, and

remanded the cause to the superior court with directions to again hear and determine defendant's motion for new trial or reduction of the degree of the offense (murder). Pursuant to this remand order the trial court heard defendant's renewed motion. It refused to order a new trial or reduce the degree of the crime, but made an order modifying the verdict ''to impose upon the defendant, life imprisonment in lieu of death.'' Thus (p. 454 [1] of 53 Cal.2d), after our order of vacation and remand, ''defendant's motions were again before the trial court for determination as on their initial submission after the return of the jury's verdict at the close of the trial,'' and the trial court's power was the same as when defendant originally moved for new trial; i.e., it could ''modify such verdict . . . by imposing the lesser punishment without granting or ordering a new trial.'' (Pen. Code, § 1181, subd. 7.)

▪ In the present case, to permit an appeal from the order denying defendant's motion to reduce the penalty would, in effect, circumvent the provision of section 1193, *ante,* f. n. 1, that ''there shall be no appeal from the order fixing the time for and directing the execution of such judgment [of death] as herein provided.'' Furthermore, by his ''Motion to Modify Impending Sentence'' after the remittitur went down from this court, defendant attempted to obtain from the trial court a change (or repetition) of its discretionary ruling upon the same facts which were before it when it originally selected the death penalty and when it refused to reduce it on motion for new trial. The situation is analogous to that which in civil cases normally calls for application of the following rule: ''Nor will an appeal from an order denying a motion to vacate an appealable order or judgment be entertained when the purpose of the motion was to change the decision of the trial court upon the same facts. [Citations.] Stated differently, if the grounds upon which the party sought to have a judgment vacated existed before the entry of judgment and would have been available upon an appeal from the judgment, an appeal will not lie from an order denying the motion. [Citations.]'' (*Litvinuk* v. *Litvinuk* (1945), 27 Cal.2d 38, 44 [7] [162 P.2d 8].)

Section 1248 of the Penal Code provides that ''If the appeal is irregular in any substantial particular, but not otherwise, the appellate court may order it to be dismissed.'' ▪ ''[W]here it appears . . . that an appeal from an order after final judgment in a death penalty case is taken

solely for purposes of delay, the appeal must be held to be irregular in a most fundamental sense. Its objective is not the correction of error, the enforcement of legal right, or the reversal of the trial court; it seeks only groundless delay, and to that extent defeat of justice, in the execution of a valid final judgment." (*People* v. *Shorts* (1948), 32 Cal.2d 502, 517 [197 P.2d 330] ; *Williams* v. *Duffy* (1948), 32 Cal.2d 578, 583 [197 P.2d 341].)

Inasmuch as no appeal pursuant to subdivision (b) of section 1239 of the Penal Code is pending, the final judgment of death, which has been affirmed by this court, is one which for a "reason other than the pendency of an appeal pursuant to subdivision (b) of Section 1239 of this [Penal] code . . . has not been executed, and . . . remains in force"; therefore, it is the duty of the trial court "on application of the district attorney, or . . . upon its own motion," to fix a date for execution of the judgment, "which must not be less than 30 days nor more than 60 days from the time of making [the] order" appointing the day for execution. (Pen. Code, § 1227.)

For the reasons above stated, the appeal is dismissed. This order is final forthwith.