[No. C006011. Third Dist. Jan. 19, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
STEVEN KING AINSWORTH, Defendant and Appellant.

**COUNSEL**

Quin Denvir, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Roger E. Venturi and J. Robert Jibson, Deputy Attorneys General, for Plaintiff and Respondent.

Kent S. Scheidegger and Charles L. Hobson as Amici Curiae on behalf of Plaintiff and Respondent.

**OPINION**

**PUGLIA, P. J.**—This appeal presents the question whether a trial court, after a judgment of conviction is final, has jurisdiction to rule on defendant's motion for discovery. We shall hold the trial court was without jurisdiction to entertain the motion.

In January 1980, defendant was sentenced to death following his conviction of first degree murder with special circumstances. The Supreme Court affirmed the judgment. (*People* v. *Ainsworth* (1988) 45 Cal.3d 984 [248 Cal.Rptr. 568, 755 P.2d 1017].) A petition for rehearing was denied on August 25, 1988, and the remittitur issued the same day.[1]

---

[1] In November 1988, defendant petitioned the United States Supreme Court for a writ of certiorari. That petition was denied on January 23, 1989. (488 U.S. 1050 [102 L.Ed.2d 1006, 109 S.Ct. 883].) On March 3, 1989, defendant petitioned for writ of mandate in the California Supreme Court, seeking review of the denial of the postremittitur discovery motion at issue in this appeal. That petition was denied on March 30, 1989. Defendant also petitioned the California Supreme Court for a writ of habeas corpus on March 27, 1989. The petition was de-

On December 20, 1988, defendant filed in the trial court a "motion for post-judgment discovery."[2] The motion sought discovery of reports, documents, photographs, and other information regarding the autopsy all of which were in existence prior to trial and some of which related to forensic testing performed prior to trial. In a declaration in support of the motion, counsel stated, inter alia, "[i]t is necessary that the information and evidence described . . . be promptly made available to [defendant's] attorneys in order that they may ascertain all relevant facts and circumstances bearing on defendant's guilt or innocence, the appropriateness of the penalty, or any possible violation of [defendant's] constitutional rights."

At a hearing, the trial court determined it had jurisdiction to entertain the motion but concluded defendant had not made an adequate showing to justify the requested discovery. The court denied the motion on January 18, 1989. Defendant appeals.[3] ■■■■ Because the trial court was without jurisdiction to entertain defendant's postjudgment motion for discovery, we shall affirm.[4]

I

■ Apart from a few narrowly focused statutory provisions (see, e.g., Pen. Code, § 1102.5; see also Evid. Code, § 1043), the right to discovery has been created by the courts in the interest of assuring defendant a fair trial. (*People* v. *Memro* (1985) 38 Cal.3d 658, 677 [214 Cal.Rptr. 832, 700 P.2d 446]; see *City of Alhambra* v. *Superior Court* (1988) 205 Cal.App.3d 1118, 1133 [252 Cal.Rptr. 789].) The right to discovery is associated with the fairness of the adversarial process during the course of trial. (*Memro, supra,* at p. 677.) An accused is entitled to any " 'pretrial knowledge of any unprivileged evidence, or information that might lead to the discovery of

nied on December 13, 1989. (*In re Ainsworth* (S009535, writ of habeas corpus den. Dec. 13, 1989).)

[2] The December 20, 1988, motion was not the first such postjudgment motion filed by defendant in the trial court. Prior to the issuance of the remittitur, defendant moved for discovery of information that might support a claim, inter alia, of juror misconduct or would show certain prosecution witnesses had been paid for their testimony. This motion was denied on August 26, 1988, the trial court ruling defendant had made not an adequate showing to warrant such discovery. Defendant later renewed his motion for discovery seeking anything in the possession of the People that might have a bearing on defendant's guilt or innocence or on his sentence. The trial court denied this motion as well, but did order the People to turn over to the defense anything that "comes to the attention of the People . . . which tends to show that the defendant did not or may not have committed any offense charged or which tends to mitigate possible punishment of the defendant . . . ."

[3] Penal Code section 1237, subdivision (b) provides an appeal may be taken by the defendant "[f]rom any order made after judgment, affecting the substantial rights of the party."

[4] Since we are concerned with the correctness of the trial court's ruling, and not its reasoning, we may affirm even if the basis for the trial court's order is incorrect. (*West Pico Furniture Co.* v. *Superior Court* (1961) 56 Cal.2d 407, 413-414 [15 Cal.Rptr. 119, 364 P.2d 295].)

evidence, *if it appears reasonable that such knowledge will assist him in preparing his defense. . . .'"* (*Ballard* v. *Superior Court* (1966) 64 Cal.2d 159, 167 [49 Cal.Rptr. 302, 410 P.2d 838, 18 A.L.R.3d 1416], original italics.)

█ There is no decisional or statutory authority for a trial court to entertain a postjudgment discovery motion which is unrelated to any proceeding then pending before the court. The reason for such lack of authority is simple. As with any other motion, a discovery motion is not an independent right or remedy. It is ancillary to an ongoing action or proceeding. After the judgment has become final, there is nothing pending in the trial court to which a discovery motion may attach.

*People* v. *Sparks* (1952) 112 Cal.App.2d 120 [246 P.2d 64] is closely on point. There, defendant made a "Motion for the Records" in the superior court, seeking to obtain the clerk's and reporter's transcripts of his trial in order to prepare a writ of error *coram nobis.* Defendant made the motion after the time for appeal had expired and the judgment was final, but before he filed a *coram nobis* petition. (At pp. 120-121.)

The *Sparks* court affirmed the denial of the motion, holding ". . . the trial court had no jurisdiction to entertain the motion for the reason that there was no proceeding pending before the court at the time." (112 Cal.App.2d at p. 121.) The court continued, " '[a] motion is not an independent right or remedy . . . but implies the pendency of a suit between the parties and is confined to incidental matters in the progress of the cause. As the rule is sometimes expressed, a motion relates to some question collateral to the main object of the action and is connected with, and dependent on, the principal remedy.' [Citation.]" (*Ibid.* )

The procedural context of defendant's discovery motion is indistinguishable from that in *Sparks* in that the motion was made prior to but in apparent anticipation of a collateral attack on the judgment. As in *Sparks,* the motion should have been dismissed for lack of jurisdiction. (See also *People* v. *Burks* (1961) 189 Cal.App.2d 313, 317 [11 Cal.Rptr. 200] ["[Defendant's postjudgment motion for reduction of sentence] does not lie because motions are not independent rights or remedies, but imply a pendency of suits between the parties and are confined to matters collateral to the main object of the actions."].)

Defendant appears to argue that jurisdiction to grant postjudgment discovery was vested in the trial court by the issuance of the remittitur. We disagree. Upon issuance of the remittitur, the trial court's jurisdiction with regard to the "remitted action" is limited solely to the making of orders

necessary to carry the judgment into effect. (See Pen. Code, §§ 1193, 1265; *People* v. *Rittger* (1961) 55 Cal.2d 849, 852 [13 Cal.Rptr. 406, 362 P.2d 38]; *People* v. *Sloper* (1926) 198 Cal. 601, 607-608 [246 P. 802].)[5]

In *Rittger, supra,* after the Supreme Court affirmed the judgment of death, defendant moved in the trial court to reduce the penalty. The motion was denied. On appeal from the order of denial, the court held the trial court correctly concluded it was without jurisdiction to entertain the motion to reduce the penalty. "Such conclusion was required by both statutory and court-made rules. Section 1193 of the Penal Code . . . provides for *reimposition,* not reconsideration, of sentence. Upon the original pronouncement of the judgment of death the sentence was entered in the minutes. Execution of the judgment began when, pursuant to the requirement of Penal Code section 1217, the defendant was delivered to the custody of the warden . . . . Imprisonment pending execution of a death sentence is a part of the punishment for the crime. [Citation.]" (55 Cal.2d at p. 852, original italics.) The court continued: "The trier of fact in its sole discretion . . . *had deliberately selected the death penalty and on motion for new trial had deliberately refused to reduce it.* After the valid, correct sentence was entered in the minutes and defendant commenced service thereof, it was no longer 'in the breast of the court' [citation] and the trial court was without jurisdiction to modify it. [Citation.] *When our remittitur went down, the trial court, in the circumstances, could do only those things required by law toward ultimate execution of the judgment;* it could not change that judgment, nor could it thereafter extend the time which it had legally fixed for execution of the sentence of death. [Citations.]" (55 Cal.2d at p. 852, italics added.)

In *People* v. *Sloper, supra,* the judgment and sentence of death was affirmed on appeal and the remittitur issued. When defendant was brought before the trial court to set a date for execution, he requested impanelment of a jury to determine his sanity and moved to stay the setting of the execution date pending the jury trial. Defendant claimed that following the entry of judgment he had become insane. (198 Cal. at pp. 604-605.) The

---

[5]Penal Code section 1193 states in relevant part: "[W]hen any judgment imposing the death penalty has been affirmed by the appellate court, sentence may be reimposed upon the defendant in his or her absence by the court from which the appeal was taken, and in the following manner: upon receipt by the superior court from which the appeal is taken of the certificate of the appellate court affirming the judgment, the judge of the superior court shall forthwith make and cause to be entered an order pronouncing sentence against the defendant, . . . and appoint a day upon which the judgment shall be executed . . . ."

Penal Code section 1265 states in relevant part: "After the certificate of the judgment has been remitted to the court below, the appellate court has no further jurisdiction of the appeal or of the proceedings thereon, and all orders necessary to carry the judgment into effect must be made by the court to which the certificate is remitted . . . ."

trial court denied the motion and defendant appealed and applied to the Supreme Court for a stay of execution of his death sentence pending his appeal. The Supreme Court framed the issue as follows: "The question presented by the application is that of the jurisdiction of the superior court to do anything in this case other than to appoint a day upon which the judgment of death shall be executed . . . ." (*Id.* at p. 605.) The Supreme Court denied the application for stay, finding adequate statutory provisions for the protection of the rights of a defendant who may have become insane after his conviction and sentence. (*Id.* at p. 607.) "We must conclude . . . that it was the intention of the legislature to limit the jurisdiction of the trial court, in proceedings of this nature, to the making of the orders necessary to carry the judgment into effect." (*Id.* at p. 608.)

The cases claimed by defendant to confer upon the trial court the jurisdiction to entertain a postjudgment motion for discovery are inapposite. In each of the cases cited, there was an on-going action or proceeding within the jurisdiction of the trial court to which the motion for discovery was appended. Moreover, in none of the cases was there a final judgment.

Thus, in *Wisely* v. *Superior Court* (1985) 175 Cal.App.3d 267 [220 Cal.Rptr. 893], a capital defendant was granted a new penalty hearing by the trial court. While the People's appeal of the trial court's order was pending, defendant moved for discovery to aid him in his penalty retrial. The trial court denied defendant's motion, citing a lack of jurisdiction. (175 Cal.App.3d at p. 269.)

The appellate court reversed, holding that the trial court retained jurisdiction over defendant's discovery request pursuant to section 916 of the Code of Civil Procedure.[6] "We hold discovery proceedings sought preparatory to an anticipated new trial on the penalty phase constitute matters embraced in the action and not affected by the judgment or order within the meaning of Code of Civil Procedure section 916." (175 Cal.App.3d at p. 270.) In the court's words, "[p]etitioner has a right to participate in discovery prior to his new trial on the penalty phase." (*Ibid.*)

*Echavarria* v. *Superior Court* (1979) 94 Cal.App.3d 467 [156 Cal.Rptr. 527] likewise fails to support defendant's position. In *Echavarria* defendant had been found incompetent to stand trial in a proceeding under section

---

[6] Code of Civil Procedure section 916 provides in pertinent part: "(a) . . . the perfecting of an appeal stays proceedings in the trial court upon the judgment or order appealed from or upon the matters embraced therein or affected thereby, including enforcement of the judgment or order, *but the trial court may proceed upon any other matter embraced in the action and not affected by the judgment or order.*" (Italics added.)

1368 of the Penal Code. Once a trial court finds a defendant incompetent "the trial or judgment shall be suspended until he becomes mentally competent . . . . (Pen. Code, § 1370.) Defendant's attorney, anticipating the resumption of criminal proceedings, sought appointment of a psychiatrist to determine whether defendant had a viable defense of insanity. The trial court denied the request, asserting a lack of jurisdiction due to the suspension of criminal proceedings pursuant to section 1370. The court of appeal reversed, holding the trial court had jurisdiction over counsel's request. Although Penal Code section 1370 bars trial or judgment while defendant is incompetent, that section does not prevent the trial court from appointing a psychiatrist to aid in preparation of the defense. (94 Cal.App.3d at pp. 469-470.)

Nor is defendant assisted by *People v. Memro, supra. While Memro* states broadly that the trial courts have inherent power "to provide for discovery in criminal cases" (38 Cal.3d at p. 677), it is apparent from a reading of the case this power is not unlimited. *Memro* involved a pretrial discovery request. Thus, like *Echavarria* and *Wisley, Memro* is distinguishable from the instant case because it involved discovery in aid of a pending action and before finality of the judgment. *Memro* does not stand for the proposition ascribed to it by defendant that the trial courts have inherent power to entertain a discovery request whenever so inclined. *Memro* stands only for the proposition that courts *which already have jurisdiction over the action before them* need neither constitutional nor statutory authority to order discovery. (38 Cal.3d at p. 677.)

Defendant argues Code of Civil Procedure section 187 confers jurisdiction upon the superior court to rule on his discovery motion.[7] While it is true section 187 applies in criminal proceedings (see *People v. Sequiera* (1981) 126 Cal.App.3d 1, 13-14 [179 Cal.Rptr. 249]), it operates only "[w]hen jurisdiction is, by the constitution or this code, or by any other statute, conferred on a court or judicial officer . . . ." (Code Civ Proc., § 187; see e.g., *Traffic Truck Sales Co.* v. *Justice's Court* (1923) 192 Cal. 377, 382 [220 P. 306], disapproved on other grounds in *People v. One 1941 Chevrolet Coupe* (1951) 37 Cal.2d 283, 303 [231 P.2d 832] ["[T]here must be some constitutional or statutory jurisdiction to make section 187 applicable."]; *Union etc. Company v. Superior Court* (1906) 149 Cal. 790, 792-793 [87 P. 1035] ["[S]ection 187 obviously does not attempt in itself to confer

---

[7] Code of Civil Procedure section 187 provides: "When jurisdiction is, by the constitution or this code, or by any other statute, conferred on a court or judicial officer, all the means necessary to carry it into effect are also given; and in the exercise of this jurisdiction, if the course of proceeding be not specifically pointed out by this code or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this code."

jurisdiction. It merely operates to enable the court to exercise a jurisdiction otherwise created."]; *Tulare County* v. *Kings County* (1897) 117 Cal. 195, 203 [49 P. 8] ["To make this section [187] available, we must assume that the statute law or the constitution confers jurisdiction in such a case as this upon the courts. But we have found no such jurisdiction to exist, and hence the section does not apply . . . ."].)

" '[J]urisdiction may be concisely stated to be the right to adjudicate concerning the subject matter in a given case.' [Citations.] [¶] Jurisdiction in any proceeding is conferred by law; that is, by the constitution or by statute." (*Harrington* v. *Superior Court* (1924) 194 Cal. 185, 188 [228 P. 15].) "[A court] cannot exercise jurisdiction in any instance until after it has acquired it, and it can acquire it only in the mode prescribed by statute." (*Arroyo D. & W. Co.* v. *Superior Court* (1891) 92 Cal. 47, 52 [28 P. 54].)

As we have noted, jurisdiction of the trial court upon issuance of the remittitur is limited to the making of orders necessary to carry the judgment into effect. (Pen. Code, §§ 1193, 1265; *Rittger, supra,* 55 Cal.2d at p. 852; *Sloper, supra,* 198 Cal. at p. 608.) Despite the availability of postjudgment remedies such as habeas corpus (see Pen. Code, §§ 1473 et seq.), defendant chose to move in the trial court for discovery. However, the limited powers of the trial court in postremittitur proceedings do not encompass jurisdiction to entertain a detached motion for discovery.

## II

██ Defendant asserts he has a federal constitutional right to postjudgment discovery; that denial of postjudgment discovery violates his constitutional right of due process. For this proposition defendant relies upon *Brady* v. *Maryland* (1963) 373 U.S. 83 [10 L.Ed.2d 215, 83 S.Ct. 1194]. But *Brady* does not stand for the proposition that the right to postjudgment discovery is of federal constitutional dimension. The defendant in *Brady* was convicted of murder after a trial in which defendant testified his accomplice committed the murder. Prior to trial, defendant requested he be allowed to examine the accomplice's extrajudicial statements. The prosecution disclosed several of the accomplice's statements, but withheld the statement in which the accomplice confessed to the murder. The Supreme Court ruled the prosecutor's suppression of the accomplice's confession violated defendant's due process right to a fair trial. (At p. 87 [10 L.Ed.2d at p. 218].) "The principle . . . is not punishment of society for misdeeds of a prosecutor but avoidance of an unfair trial to the accused. Society wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly." (373 U.S. at p. 87 [10 L.Ed.2d at p. 218].)

*Brady* does not enunciate an independent constitutional right to discovery at any time in any proceeding. *Brady* simply vindicates a defendant's right to a *fair trial* as mandated by the due process clause. (See e.g., *United States* v. *Agurs* (1976) 427 U.S. 97, 107 [49 L.Ed.2d 342, 352, 96 S.Ct. 2392]. " 'There is no general constitutional right to discovery in a criminal case, and *Brady* did not create one.' " (*Weatherford* v. *Bursey* (1977) 429 U.S. 545 [51 L.Ed.2d 30, 97 S.Ct. 837], quoted in *Pennsylvania* v. *Ritchie* (1987) 480 U.S. 39, 59-60 [94 L.Ed.2d 40, 59, 107 S.Ct. 989]; see also *United States* v. *Beasley* (5th Cir. 1978) 576 F.2d 626, 630 ["*Brady* is not a discovery rule, but a rule of fairness and minimum prosecutorial obligation."]; *United States* v. *Starusko* (3d Cir. 1984) 729 F.2d 256, 262 ["There can be no violation of *Brady* unless the government's nondisclosure infringes the defendant's fair trial right."].)

The California courts and Legislature have scrupulously protected a defendant's right to discovery in order to ensure his constitutional right to a *fair trial.* (See, e.g., Evid. Code, § 1043 et seq.; *Memro, supra,* 38 Cal.3d at p. 677 ["The exercise of [discovery] powers is consistent with 'the fundamental proposition that [the accused] is entitled to a fair trial and an intelligent defense in light of all relevant and reasonably accessible information.' "].) Indeed, the California Supreme Court over 30 years ago adumbrated the holding in *Brady*: "Absent some governmental requirement that information be kept confidential for the purposes of effective law enforcement, the state has no interest in denying the accused access to all evidence that can throw light on issues in the case, and in particular it has no interest in convicting on the testimony of witnesses who have not been as rigorously cross-examined and as thoroughly impeached as the evidence permits." (*People* v. *Riser* (1956) 47 Cal.2d 566, 586 [305 P.2d 1], disapproved on other grounds in *People* v. *Morse* (1964) 60 Cal.2d 631, 649 and fn. 2 [36 Cal.Rptr. 201, 388 P.2d 33, 12 A.L.R.3d 810].)

Defendant ignores the fundamental difference between trial and posttrial proceedings. The constitutional protections designed to ensure a fair trial do not automatically attach to proceedings involving a collateral attack on the judgment. This point was reaffirmed in *Pennsylvania* v. *Finley* (1987) 481 U.S. 551 [95 L.Ed.2d 539, 107 S.Ct. 1990], which held that neither due process nor equal protection required Pennsylvania to appoint counsel for indigent prisoners seeking postconviction relief. (At pp. 555-556 [95 L.Ed.2d at pp. 545-547].) Relying upon the fundamental difference between trial and posttrial proceedings, specifically those involving collateral attack, the *Finley* court held: "Postconviction relief is even further removed from the criminal trial than is discretionary direct review. It is not part of the criminal proceeding itself, and it is in fact considered to be civil in nature. [Citations.] It is a collateral attack that normally occurs only after the

defendant has failed to secure relief through direct review of his conviction. *States have no obligation to provide this avenue of relief, [citation], and when they do, the fundamental fairness mandated by the Due Process Clause does not require that the State supply a lawyer as well.*" (*Id.* at pp. 556-557 [95 L.Ed.2d at p. 547], italics added.)

*Finley* made the point that different proceedings implicate different constitutional considerations. Because the trial is the vehicle by which the state overcomes defendant's presumption of innocence and deprives him of his freedom, the trial is circumscribed by the full panoply of constitutional protections. (See *Finley, supra,* 481 U.S. at pp. 555-556 [95 L.Ed.2d at p. 546]; *Ross v. Moffitt* (1974) 417 U.S. 600, 610-611 [41 L.Ed.2d 341, 351, 94 S.Ct. 2437].) A collateral attack on a final judgment does not implicate the same interests. Defendant has been convicted and his appeal either rejected or waived. He is presumed to be legally convicted (*Ross, supra,* 417 U.S. at pp. 610-611 [41 L.Ed.2d at p. 351]; *Johnson v. Zerbst* (1938) 304 U.S. 458, 468 [82 L.Ed 1461, 1468, 58 S.Ct. 1019, 146 A.L.R. 357]; see *In re Berry* (1955) 43 Cal.2d 838, 846 [279 P.2d 18]). Thereafter he must initiate the proceedings and carry the burden if he wishes to attack the judgment collaterally. (See *Ross, supra,* 417 U.S. at p. 610 [41 L.Ed.2d at p. 351]; *In re Imbler* (1963) 60 Cal.2d 554, 560 [35 Cal.Rptr. 293, 387 P.2d 6].) Thus, "there are significant differences between the trial and appellate stages of a criminal proceeding . . ." (*Ross, supra,* 417 U.S. at p. 610 [41 L.Ed.2d at p. 351]), and given these differences, defendant is necessarily afforded different constitutional protections. (*Finley, supra,* 481 U.S. at pp. 555-558 [95 L.Ed.2d at pp. 546-548].)

We have no occasion to determine whether defendant may be entitled to discovery in aid of remedies by way of habeas corpus, because he has not pursued such a remedy. We merely note that *Finley* suggests defendant is not entitled to postconviction discovery on the ground he was entitled to prejudgment discovery under California law.

That defendant is faced with a judgment of death does not alter the analysis. Recently, in a suit by condemned prisoners claiming a constitutional right to counsel at state expense to pursue collateral attacks upon their convictions, the federal Supreme Court held petitioners' death sentences had no bearing on their procedural rights at state habeas corpus proceedings: "[T]he rule of *Pennsylvania v. Finley* should apply no differently in capital cases than in noncapital cases. State collateral proceedings are not constitutionally required as an adjunct to the state criminal proceedings and serve a different and more limited purpose than either the trial or appeal. The additional safeguards imposed by the Eighth Amendment at the trial stage of a capital case are, we think, sufficient to assure the

reliability of the process by which the death penalty is imposed. We therefore decline to read either the Eighth Amendment or the Due Process Clause to require yet another distinction between the rights of capital case defendants and those in noncapital cases." (*Murray* v. *Giarratano* (1989) 492 U.S. __, __ [106 L.Ed.2d 1, 11, 109 S.Ct. 2765], fn. omitted.)

■ Although "collateral relief proceedings are a central part of the review process for prisoners sentenced to death" (*Murray, supra,* 492 U.S. at p. __ [106 L.Ed.2d at p. 13], (conc. opn. of Kennedy, J.)), it is clear from *Finley* and *Giarratano* that the states are not constitutionally required to provide such avenues of access to convicted defendants seeking to attack a final judgment. When in fact such procedures are established, the states are permitted great leeway in administering the system, including the authority in certain instances to limit review and to decline to extend the entire panoply of rights otherwise required to ensure a fair trial. Thus, in reversing the lower court's decision, the *Finley* court held: "[T]he decision below rests on a premise that we are unwilling to accept—that when a State chooses to offer help to those seeking relief from convictions, the Federal Constitution dictates the exact form such assistance must assume. On the contrary, in this area States have substantial discretion to develop and implement programs to aid prisoners seeking to secure post-conviction review." (*Finley, supra,* 481 U.S. at p. 559 [95 L.Ed.2d at p. 548].)[8] The state need not provide any avenue for collateral attack (*Finley, supra,* 481 U.S. at p. 557 [95 L.Ed.2d at p. 547]); a fortiori, where an avenue is provided, the state may specify the operational details.

---

[8]Defendant relies on *Hopkinson* v. *Shillinger* (10th Cir. 1989) 866 F.2d 1185 to support his constitutional claim of entitlement to postjudgment discovery. In *Hopkinson* the defendant had been convicted of procuring a murder. The actual killers had not been caught and a grand jury continued to investigate the case. Following affirmance of his conviction, the defendant sought access to testimony before the investigating grand jury, claiming evidence tending to exculpate him may have been presented to the grand jury. Defendant's request for the grand jury transcripts was dismissed following the Wyoming Supreme Court's dismissal of his petition for writ of habeas corpus. (At pp. 1192, 1220-1221 and fn. 1.)

Defendant sought federal habeas relief, claiming the dismissal of the discovery request on the grounds he had no proceeding pending in the court violated his constitutional rights under *Brady* v. *Maryland.* Relying on decisional law involving the right of access to grand jury testimony, the *Hopkinson* court ordered an in camera review of the testimony to determine whether such testimony might be beneficial to defendant. (866 F.2d at p. 1221.)

Although defendant argued in the federal habeas proceeding that the Wyoming Supreme Court violated his constitutional rights in denying discovery, the *Hopkinson* court did not rule on that contention. Rather, the court held only that defendant could seek access to the grand jury transcripts by virtue of *federal* procedural rules governing discovery. (866 F.2d at pp. 1220-1221.) Thus, *Hopkinson* is not authority for the proposition there is a federal constitutional right to discovery in collateral state proceedings. Indeed, the court stated that "[t]he presence of a procedural deficiency in a state's scheme for postconviction relief . . . does no violence to federal constitutional rights." (*Id.* at p. 1219.)

■ The jurisdiction of the trial court following finality of the judgment is confined to those acts required to execute the judgment. (Pen. Code, §§ 1193, 1265; *Rittger, supra,* 55 Cal.2d at p. 852.) Although the Legislature could by statute extend the trial court's jurisdiction to hear a postjudgment discovery motion, it has not done so. Furthermore, it is not within the province of this court, nor are we required in order to give effect to federal constitutional rights, to engraft upon the procedures established for collateral attack a free floating right to discovery.

Although the jurisdictional determination is sufficient to the case, we conclude by noting that practical considerations argue compellingly against defendant's position. If every prisoner incarcerated under a final judgment were entitled to postjudgment discovery, the burden on the system would be overwhelming. In this case alone, defendant has moved for postjudgment discovery, renewed that request in a more limited form, and then on an entirely different basis moved again for such discovery. If a defendant under final judgment of conviction is entitled to discovery merely on the speculative hope that something "[might] bear [ ] on defendant's guilt or innocence, the appropriateness of the penalty, or any possible violation of [defendant's] constitutional rights," the number of such requests from similarly situated defendants will predictably bury the courts under a blizzard of paper.

Defendant is convicted, not merely charged and presumed innocent. The judgment has been affirmed and is final. If defendant has grounds for habeas corpus, he is of course entitled to petition the court for that relief. (See fn. 1, *ante.*) But to allow a motion for discovery cast loose from any pending action or proceeding is a remedy this court is not authorized by law or disposed by whim to grant.

The judgment (order) is affirmed.

Sims, J., and Scotland, J., concurred.

A petition for a rehearing was denied February 15, 1990, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied March 22, 1990.