Filed 3/12/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JOSE LOUIE ALVAREZ,<br><br>        Defendant and Appellant. | A152349<br><br>(Sonoma County<br>Super. Ct. No.  SCR541450) |

        May a criminal defendant confined in a state mental hospital pursuant to a plea of not guilty by reason of insanity (NGI) issue subpoenas duces tecum against the hospital and hospital police when there is no underlying active proceeding, motion or petition? No.  We conclude, as did the trial court, that in the absence of any such proceedings the court's continuing jurisdiction over NGI cases does not support a generalized right of defendants to promulgate discovery to third parties unrelated to any active legal matter. We therefore affirm the trial court's order quashing the subpoenas duces tecum at issue.

**BACKGROUND**

        In 2008 Jose Alvarez pled not guilty by reason of insanity to felony assault with a firearm on a firefighter or peace officer, with a firearm enhancement, and was committed to Napa State Hospital for a maximum commitment term of 18 years.  His case thereafter remained largely inactive other than for the submission of periodic reports pursuant to Penal Code section 1026, subdivision (f).[1]

---

        [1] Penal Code section 1026, subdivision (f) states: "If the defendant is confined in a state hospital or other treatment facility as an inpatient, the medical director of the facility shall, at six-month intervals, submit a report in writing to the court and the community program director of the county of commitment, or a designee, setting forth the status and

1

In June 2017, Alvarez's attorney issued subpoenas to Napa State Hospital and the Napa State Hospital Police under Alvarez's 2008 criminal case number.    The subpoena served on the hospital sought the following items:

"1. Hospital policies and procedures regarding handling aggressive patients, use of personal duress alarm system (PDAS), response to alarm, criteria for hospital police involvement, criteria for hospital police to take control of incident, reporting of incidents of threats and/or acts of violence, any rules/regulations/protocols involving how hospital staff interface with hospital police.

"2.  Hospital records, including incident reports, emails, memos, photos, videos or other electronic media records, any form of communication involving Jose Alvarez's aggressive conduct; this to include minutes of any meetings or conferences in which Jose Alvarez'[s] aggressive behavior is considered, including: medical/nursing/psychiatric/ psychological conferences, grand rounds, etc.

"3. Copy of any/all correspondence to witnesses by NSH administration, medical director, other NSH staff to witnesses and/or other NSH personnel regarding the incident involving Jose Alvarez on 3/23/2017 and/or 3/21/2017.  This request to include emails, texts, other forms of electronic communication as well as notes, memos, incident reports. Any/all correspondence between Dr. Laguitan and his supervisor, NSH Medical Director, or other administrator which deals with the placement of Jose Alvarez at the jail and recommending criminal prosecution.

"4. Copies of all reports/letters written by NSH staff titled: PRE-ARREST CLINICAL INTERVIEW AND RECOMMENDATIONS prepared in the last five (5) years; this does not request disclosure of the actual patients involved but rather the entire report which is

progress of the defendant.  The court shall transmit copies of these reports to the prosecutor and defense counsel."

We take judicial notice of relevant documents included in the "Clerk's Transcript of Confidential Documents" that were not provided to the trial court during the proceedings on the motion to quash the subpoenas.  (Evid. Code, §§ 452, subd.(d), 459, subd. (a).)

2

written documenting the reasons why a NSH patient is being transferred to the jail or other non-psychiatric incarceration.

"5. Any/all Jose Alvarez hospital records for the period of 01/01/14 to present.

"6. Hospital policies/procedures regarding when/how/why incidents involving patients committed pursuant to Penal Code § 1026 et. seq. (NGI) are to be handled as new crimes, allow the patient to be arrested and taken to a jail facility. Include the policies and procedures for how the transfer of care from the state hospital to the county jail. Include the policies and procedures developed by the Napa County jail in handling the incarceration of Napa State Hospital clients committed as NGI patients.

"7. Copy of all reports, reviews, investigations into the incident which occurred on 03/23/2017 involving Jose Alvarez and his subsequent arrest and placement at the Napa County Jail. Copy of all photos, recordings, emails, electronic evidence dealing with this incident. To include all said evidence which was gathered after the date of the incident 3/23/17 and is an ongoing request to provide said information until such time as incident is closed by way of a conviction, return to hospital or transfer to another facility by order of a court.

"8. Copy of any/all prior incidents for the past five (5) years where the NSH police were called to assist with problems with Jose Alverez behavior. To include follow-up investigations or assessments. Include any photos or recordings or other tangible evidence involved in any incident.

"9. Copy of any/all hospital quality assurance reports involving the handling of patient aggressive behaviors, use of personal alarm system, use of hospital police, use of force by hospital police, the filing of criminal charges against NSH patients for these behaviors and any record or report as to the effectiveness of NSH practices dealing with aggressive patients in the past five (5) years.

"10. Statistics as to the number of times NSH NGI patients are arrested while committed to NSH, statistics as to the number of subsequent convictions, type of crimes, outcome, days spent incarcerated in the jail, and any other type of report/reviews involving

criminal prosecution of NGI hospital patients for the past five (5) years. This request is NOT seeking any personal identification of said patients.

"11. Copy of any/all complaints made by patients, California Disability Rights, family members, staff, outside care providers regarding the handling of aggressive behaviors by NSH patients. If possible delineate the type of commitment the patient is committed under such as NGI, IST, MDO, etc.

"12. Copy of any/all recommendations, reviews, disciplinary actions taken against NSH by The Department of State Hospitals, any California government agency or other regulatory agency in the past five (5) years. Include all responsive communication and follow-up concerning identified areas of concern."

The subpoena served on the Napa State Hospital Police sought overlapping, and similarly broad, categories of information:

"1. Napa State Hospital Police policies and procedures regarding handling aggressive patients, use of personal duress alarm system (PDAS), response to alarm, criteria for hospital police involvement, criteria for hospital police to take control of incident, reporting of incidents of threats and/or acts of violence, any rules/regulations/protocols involving how hospital staff interface with hospital police.

"2. Napa State Hospital Police records, including incident reports, emails, memos, photos, videos or other electronic media records, any form of communication involving Jose Alvarez's aggressive conduct for past five (5) years; this to include minutes of any meetings or conferences in which Jose Alvarez'[s] aggressive behavior is considered. Also to include follow-up investigations and reports.

"3. Any/all Jose Alvarez Napa State Hospital Police records for the period of 01/01/14 to present.

"4. Napa State Hospital Police policies/procedures regarding when/how/why incidents involving patients committed pursuant to Penal Code § 1026 et. seq. (NGI) are to be handled as new crimes, allow the patient to be arrested and taken to a jail facility. Include the policies and procedures for how the transfer of care from the state hospital to

4

the county jail. Include the policies and procedures developed by the Napa County jail in handling the incarceration of Napa State Hospital clients committed as NGI patients.

5. Copy of all reports, reviews, investigations into the incident which occurred on 03/23/2017 involving Jose Alvarez and his subsequent arrest and placement at the Napa County Jail. Copy of all photos, recordings, emails, electronic evidence dealing with this incident. To include all said evidence which was gathered after the date of the incident 3/23/17 and is an ongoing request to provide said information until such time as incident is closed by way of a conviction, return to hospital or transfer to another facility by order of a court.

"6. Statistics as to the number of times NSH NGI patients are arrested while committed to NSH, statistics as to the number of subsequent convictions, type of crimes, outcome, days spent incarcerated in the jail, and any other type of report/reviews involving criminal prosecution of NGI hospital patients for the past five (5) years. This request is NOT seeking any personal identification of said patients.

"7. Copy of any/all complaints made by patients, California Disability Rights, family members, staff, outside care providers regarding the handling of aggressive behaviors by NSH patients. If possible delineate the type of commitment the patient is committed under such as NGI, IST, MDO, etc.

"8. Copy of all Pitchess Motions made and any discovery provided pursuant to Pitchess motion against any officer involved in the 03/23/17 [*sic*] to include but not limited to the following officers: Stuart Donaldson, Ross Tweedy, Stuart Yocum, Herbert Tubillara, Vuong Truong, Michael Hauscarriague, Jose Becerra, and Sergio Flores.

"9. Copies of any/all citizen complaints, hospital repo[r]ts, internal investigations, patient rights advocate reports of problems involving the above named officers.

10. Copy of any/all recommendations, reviews, disciplinary actions taken against NSH Police by The Department of State Hospitals, any California government agency or other regulatory agency in the past five (5) years. Include all responsive communication and follow-up concerning identified areas of concern."

Alvarez did not file any kind of petition or proceeding in connection with the subpoenas. Nor did he move to re-open discovery or otherwise seek permission to serve the subpoenas.

The state moved to quash both subpoenas on the grounds that (1) no law authorizes a defendant to promulgate wide-ranging discovery on third parties untethered to an active case or controversy; (2) the subpoenas were overly broad, ambiguous and uncertain; and (3) they sought materials that were privileged and confidential or can only be obtained through a *Pitchess*[2] motion. In opposition, Alvarez cited *In re Cirino* (1972) 28 Cal.App.3d 1009 (*Cirino*) as authority for the committing court's continuing power to "make whatever orders are necessary to make the confinement effective" until it determines that sanity has been restored and argued the discovery was appropriate because his case remains " 'active' and 'pending' " until he is either deemed restored to sanity or conserved.[3]

The court granted the motions to quash. It ruled: "Although defendant is correct that the In re Cirino (1972) 28 Cal.App.3d 1009 case stands for the proposition that this Court continues to have *jurisdiction* over issues pertaining to defendant's Napa State Hospital confinement, the issue at hand is not whether the Court has jurisdiction over defendant's confinement. Instead, the issue is whether or not defendant is authorized to serve P.C.Sec 1326 records subpoenas at any time during defendant's NGI confinement. The Cirino case does *not* stand for the proposition that a confined NGI defendant can promulgate wide-ranging discovery on third parties that is not relevant to any existing controversy. This Court does not believe the discovery is authorized under Cirino or any other law. The Court notes that there is not even a pending motion regarding defendant's conditions of confinement; although it's unclear whether the mere filing of such a motion would allow defendant to serve the instant discovery requests."

---

[2] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531.

[3] Alvarez also argued the state had not shown the subpoenas were subject to *Pitchess* or intruded improperly on privacy and confidentiality rights, but he withdrew his requests for certain items that he conceded were subject to *Pitchess* or duplicative.

The court also found Alvarez failed to demonstrate the relevance of the information sought. "[T]here is no pending controversy, either within the NGI case or by way of a separately filed habeas petition. Defendant states in general terms that the requested discovery is 'relevant and necessary to his case,' but fails to state exactly *why this information is being requested* or *how it would be used.* Based on a review of the subpoenas, it appears that petitioner may be seeking discovery about defendant's conditions of confinement for a potential habeas petition or civil lawsuit. However, defendant fails to demonstrate that he's entitled to any such discovery prior to the issuance of an OSC on a properly filed habeas petition or prior to the filing of a civil lawsuit. Generally, the court is without jurisdiction to order discovery in a habeas corpus proceeding before the issuance of an OSC. Board of Prison Terms v. Superior Court (Ngo)(2005) 130 Cal.App.4th 1212, 1239. Defendant's status as a person serving an NGI commitment should not provide defendant with a backdoor way to obtain discovery for potential use in a subsequently filed habeas petition or civil lawsuit. At this state of the NGI case, the discovery request simply has no relevance to anything about defendant's NGI case."

This appeal is timely.

## DISCUSSION

Alvarez concedes that no specific statutory or other authority permits a post-commitment NGI defendant to subpoena information pertaining to his or her treatment, conditions of confinement or restoration of sanity. Instead, relying principally on *Cirino, supra,* 28 Cal.App.3d 1009, he asserts that a right to such discovery at any time during his commitment follows from the trial court's continuing jurisdiction under Penal Code section 1026 and its authority under Code of Civil Procedure 187 to exercise that jurisdiction through "any suitable process or mode of proceeding."[4] Alvarez argues the

---

[4] Code of Civil Procedure section 187 provides that "When jurisdiction is, by the Constitution or this Code, or by any other statute, conferred on a Court or judicial officer, all the means necessary to carry it into effect are also given; and in the exercise of this jurisdiction, if the course of proceeding be not specifically pointed out by this Code or the

7

absence of any pending petition, motion or application relating to his confinement is irrelevant because "it is imperative that counsel have access to documents regarding the defendant[']s treatment, progress, and confinement at any time throughout the NGI commitment so that counsel can ensure that the defendant's treatment is adequate and that any motions regarding changes to confinement or restoration of sanity can be timely made where appropriate."

We disagree.[5] Nothing in *Cirino* supports the right of a defendant committed pursuant to an NGI plea to conduct freestanding discovery unrelated to a pending motion, petition or other proceeding. In *Cirino*, a defendant committed pursuant to an NGI plea brought a petition for a writ of habeas corpus challenging the trial court's jurisdiction to order the hospital to withhold grounds privileges from him. Cirino contended that hospital personnel, not the court, had sole authority to make that determination. Rejecting that contention, the court of appeal held the trial court's duty to order confinement under Penal Code section 1026 "carries with it the power to make whatever orders are necessary to make the confinement effective," including orders that prevent the defendant's escape from confinement. (*Cirino*, *supra*, 28 Cal.App.3d at pp. 1014, 1015.) "The granting of 'grounds privileges' may or may not be a lack of sufficient confinement, depending on many circumstances. Since we are considering *jurisdiction* at this point, it is sufficient to support the court's order that the subject matter of the order is adequate confinement, as required by the statute." (*Id*. at p. 1014.) Nothing in the court's holding or reasoning supports an NGI defendant's right to propound free-standing discovery, as Alvarez suggests.

Nor do the other cases Alvarez cites support a right to propound discovery based only on his continuing confinement as an NGI defendant. *Alford v. Superior Court* (2003) 29 Cal.4th 1033, *People v. Superior Court* (*Barrett*) (2000) 80 Cal.App.4th 1305

---

statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this Code" Section 187 applies in criminal as well as civil cases. (*People v. Ainsworth* (1990) 217 Cal.App.3d 247, 254 (*Ainsworth*).)

[5] We will assume arguendo that the order is appealable.

and *People v. Memro* (1985) 38 Cal.3d 658 address the rights of criminal defendants to pretrial discovery. *Wisely v. Superior* Court (1985) 175 Cal.App.3d 267 holds the People's appeal of a new trial order did not deprive the trial court of jurisdiction over defense discovery propounded in preparation for the new trial. *In re Steele* (2004) 32 Cal.4th 682 concerns a statute that expressly authorizes post-conviction discovery in capital cases. And *Echavarria v. Superior Court* (1979) 94 Cal.App.3d 467 holds that a defendant found incompetent to stand trial may seek a psychiatric examination to explore potential defenses should she be returned for trial. None of these cases supports the notion that a defendant committed under an NGI plea is entitled to freestanding discovery from the hospital and its police force "so that counsel can ensure that the defendants' treatment is adequate and that any motions regarding changes to confinement or restoration of sanity can be timely made where appropriate."

More apposite is *Ainsworth*, *supra*, 217 Cal.App.3d at p. 249, which held the trial court lacked jurisdiction to entertain a convicted capital defendant's discovery motion. (*Ibid.*) Having reached that conclusion, the *Ainsworth* court went on to "not[e] that practical considerations argue compellingly against defendant's position. If every prisoner incarcerated under final judgment were entitled to postjudgment discovery, the burden on the system would be overwhelming. In this case alone, defendant has moved for postjudgment discovery, renewed that request in a more limited form, and then on an entirely different basis moved again for such discovery. If a defendant under a final judgment of conviction is entitled to discovery merely on the speculative hope that something '[might] bear [] on defendant's guilt or innocence, the appropriateness of the penalty, or any possible violation of [defendant's] constitutional rights,' the number of such requests from similarly situated defendants will predictably bury the courts under a blizzard of paper. [¶] . . . If defendant has grounds for habeas corpus, he is of course entitled to petition the court for that relief. . . . But to allow a motion for discovery cast

9

loose from any pending action or proceeding is a remedy this court is not authorized by law or disposed by whim to grant." (*Id*. at p. 259, footnote omitted.)[6]

So too here. As the trial court observed, "[f]or all intents and purposes, the NGI proceeding is currently inactive. There is no pending controversy. There is no pending petition for restoration of sanity or extension of commitment. There's been no issuance of an OSC on a habeas petition for which discovery orders would be appropriate. No civil action has been filed by defendant." In these circumstances, the court correctly concluded its jurisdiction under Penal Code section 1026 does not authorize Alvarez to subpoena information from the hospital and its police untethered to any pending proceeding.

## DISPOSITION

The order granting the motions to quash is affirmed.

---

[6] Penal Code section 1054.9, as amended effective January 1, 2019, establishes a mechanism for postconviction discovery under certain circumstances "in cases involving a conviction of a serious felony or a violent felony resulting in a sentence of 15 years or more." (Pen. Code, § 1054.9, subd. (a), as amended by Stats. 2018, ch. 482 (A.B. 1987) § 2.) By its terms, it is inapplicable to Alvarez's commitment pursuant to his plea of not guilty by reason of insanity.

                                       _____

                                       Siggins, P.J.

WE CONCUR:


_____

Fujisaki, J.


_____

Petrou, J.

11

People v. Alvarez

Trial Court:                                   Sonoma County Superior Court


Trial Judge:                                   Honorable Elliot Daum

Counsel:

Michele Kemmerling, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Bacerra, Attorney General, Fiel Tigno, Supervising Deputy Attorney General, Terry Senne, Deputy Attorney General, for Plaintiff and Respondent.